UNITED STATES of America, Plaintiff-Appellee,

v.

James Ralph BERICK and Timothy Culver, Defendants-Appellants.

No. 82–1493.

United States Court of Appeals, Fifth Circuit.

July 11, 1983.

Certiorari Denied Oct. 11 and Oct. 17, 1983.

See 104 S.Ct. 255, 286.

---

Hugh Lowe, Austin, Tex., for Berick.

William A. White, Austin, Tex., for Culver.

Sidney Powell, Archie Carl Pierce, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN and TATE, Circuit Judges, and DAVIS *, District Judge.

W. EUGENE DAVIS, District Judge:

Following a bench trial, appellants, Berick and Culver, were convicted on all three counts of a three-count indictment charging them with various offenses related to possession, manufacture and distribution of methamphetamine and one of its chemical components. Each was sentenced to a total of eight years in custody with a special parole term to follow.

The only substantial issue raised by the appeal relates to the propriety of a warrantless search in which critical evidence was seized. Appellants argue that the trial court erred in denying the motion to suppress and concluding that circumstances were sufficiently exigent to justify the warrantless entry into Berick's premises.

## I. FACTUAL BACKGROUND

On November 15, 1981, the Austin, Texas office of the Drug Enforcement Administration (DEA) became aware that a methamphetamine laboratory was in operation in the Austin area. On November 17, DEA agents obtained from an informant the telephone number of the laboratory. At approximately 3:00 p.m. on November 18, DEA agents determined from the telephone company that the telephone number furnished by the informant had been issued to appellant, Berick. Shortly after 4:00 p.m. on November 18, agents located Berick's rural residence and connected buildings, which were placed under surveillance. The premises under surveillance consisted of a mobile home, a large tent and a shed, all enclosed by a fence. The methamphet-

* District Judge of the Western District of Louisiana, sitting by designation.

mine laboratory was located in the shed; appellants resided in the mobile home.

At approximately 5:00 p.m. on November 18, undercover DEA agent Riggsbee met with appellant Culver at a convenience store to discuss purchasing methamphetamine. The U-Tote-Em convenience store was located 15 to 20 minutes from the premises under surveillance. The DEA agent noticed that Culver smelled strongly of phenylacetone, a component developed during the manufacture of methamphetamine. Culver told agent Riggsbee that he was a chemist engaged in the manufacture of methamphetamine but that he was having trouble with the crystalization process. Agent Riggsbee agreed to buy from Culver a quantity of liquid methamphetamine for $1250. Culver stated that he would return to his lab, obtain the methamphetamine oil and meet agent Riggsbee in the Tom Thumb grocery store parking lot 30 to 40 minutes later.

Culver remained under surveillance as he returned to the laboratory and then to the prearranged meeting place. At approximately 6:00 p.m., Culver, accompanied by his wife, Nina, met agent Riggsbee and delivered a liquid which Culver claimed was methamphetamine oil. The Culvers were arrested immediately. The arresting officers learned from Nina that four people remained at the laboratory site, that they were armed and that she and her husband were expected to return to the laboratory very shortly. This information was transmitted by radio to the agent in charge of the surveillance of the methamphetamine lab.

A few minutes later, and without obtaining a warrant, agents at the scene entered the mobile home and shed. The agents found appellant Berick and Robert Davis in the shed and Mrs. Berick and Robert Rezek in the mobile home. Several guns were found during the course of the arrests. The agents, who found the lab in operation, shut off the heat to the chemicals and secured the evidence. They then transported all the suspects except Mr. Berick to Austin for processing and began preparation of an affidavit to obtain a warrant. After a warrant was obtained at approximately 10:00 p.m., the officers re-entered the premises and recovered evidence for use at the trial.

## II. DISCUSSION

█ The search was clearly improper unless exigent circumstances were present which justified the warrantless entry. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409. The government had the burden of establishing exigent circumstances to excuse the warrantless search. *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1969); *United States v. Edwards*, 441 F.2d 749 (5th Cir.1971).

█ The trial court found that one to four hours were required to obtain a warrant and concluded that the circumstances were sufficiently exigent to justify the warrantless entry. The record clearly supports the conclusion of the trial court that one to four hours were required to obtain a traditional warrant.[1] We agree with the conclusion of the trial court that exigent circumstances were present which justified the warrantless entry and search of the premises rather than delay entry up to four hours while awaiting a warrant.

The trial court, however, in ruling that exigent circumstances existed to excuse the failure to obtain a warrant, did not assess the time required to obtain a federal warrant by telephone.

Federal magistrates are authorized under Rule 41(c)(2), Fed.Rules Cr.Proc.,[2] to issue

---

1. DEA agent Riggsbee testified that it required approximately four hours to obtain this warrant and that this was the usual delay in getting a warrant.

2. (2) Warrant upon oral testimony
   (A) General Rule. If the circumstances make it reasonable to dispense with a written affidavit, a Federal Magistrate may issue a warrant based upon sworn oral testimony communicated by telephone or other appropriate means.
   (B) Application. The person who is requesting the warrant shall prepare a document to be known as a duplicate original warrant and shall read such duplicate original warrant, verbatim, to the Federal magistrate. The Federal magistrate shall enter,

warrants based on telephone communications.

The legislative history reflects that an important purpose for the rule was to encourage law enforcement personnel to obtain warrants.[3]

■ In assessing the exigencies of circumstances, we conclude that trial courts should consider the time needed to obtain a telephonic warrant. This is consistent with the position taken by the Courts of Appeal in the Seventh, Ninth, Tenth and D.C. Circuits.[4]

■ Because the government has the burden of establishing the exigency of the circumstances in order to excuse a warrantless search,[5] the government must ordinarily introduce evidence of the time required to obtain a telephonic warrant and the availability of that warrant.[6] The record

---

3. The advisory committee note to the 1977 amendment provides in part:

Use of search warrants can best be encouraged by making it administratively feasible to obtain a warrant when one is needed. One

verbatim, what is so read to such magistrate on a document to be known as the original warrant. The Federal magistrate may direct that the warrant be modified.

(C) Issuance. If the Federal magistrate is satisfied that the circumstances are such as to make it reasonable to dispense with a written affidavit and that grounds for the application exist or that there is probable cause to believe that they exist, the Federal magistrate shall order the issuance of a warrant by directing the person requesting the warrant to sign the Federal magistrate's name on the duplicate original warrant. The Federal magistrate shall immediately sign the original warrant and enter on the face of the original warrant the exact time when the warrant was ordered to be issued. The finding of probable cause for a warrant upon oral testimony may be based on the same kind of evidence as is sufficient for a warrant upon affidavit.

(D) Recording and certification of testimony. When a caller informs the Federal magistrate that the purpose of the call is to request a warrant, the Federal magistrate shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant. If a voice recording device is available, the Federal magistrate shall record by means of such device all of the call after the caller informs the Federal magistrate that the purpose of the call is to request a warrant. Otherwise a stenographic or longhand verbatim record shall be made. If a voice recording device is used or a stenographic record made, the Federal magistrate shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court. If a longhand verbatim record is made, the Federal magistrate shall file a signed copy with the court.

(E) Contents. The contents of a warrant upon oral testimony shall be the same as the contents of a warrant upon affidavit.

reason for the nonuse of the warrant has been the administrative difficulties involved in getting a warrant, particularly at times of the day when a judicial officer is ordinarily unavailable .... Federal law enforcement officers are not infrequently confronted with situations in which the circumstances are not sufficiently "exigent" to justify the serious step of conducting a warrantless search of private premises, but yet there exists a significant possibility that critical evidence would be lost in the time it would take to obtain a search warrant by traditional means.

. . . . .

... The unavailability of [a telephonic warrant] procedure ... makes more tempting an immediate resort to a warrantless search in the hope that the circumstances will later be found to have been sufficiently "exigent" to justify such a step.

Fed.R.Crim.P. 41(c)(2), Notes of Advisory Committee on Rules, 1977 Amendment, reprinted in [1977] U.S.Code Cong. & Ad.News 527, 534; H.R.Rep. No. 195, 95th Cong., 1st Sess. 10 (1977). Indeed, one of the concerns of the House was that the proposed amendment might not have "the intended result of encouraging the use of warrants." H.R.Rep. No. 195, at 11; see Cong.Rec. 11,110 (1977). United States v. McEachin, 670 F.2d 1139 (D.C. Cir.1981).

4. United States v. Cuaron, 700 F.2d 582 (10th Cir.1983); United States v. Jones, 696 F.2d 479 (7th Cir.1982); United States v. McEachin, 670 F.2d 1139 (D.C.Cir.1981); United States v. Hackett, 638 F.2d 1179, 1184–85 (9th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). See also Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); United States v. Whitfield, 629 F.2d 136, 142 (D.C.Cir.1980); United States v. Baker, 520 F.Supp. 1080, 1083 (S.C.Iowa 1981).

5. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1969).

6. United States v. McEachin, 670 F.2d 1130 (D.C.Cir.1981).

need not disclose such specific proof, however, where the exigencies in a particular case are so imperative that recourse to even a telephone warrant was unavailable.[7]

The recent Tenth Circuit decision of *United States v. Cuaron,* 700 F.2d 582 (10th Cir.1983) is factually apposite.

Following the 2:00 p.m. arrest of a drug dealer, Jon Neet, law enforcement officers had probable cause to search the home of appellant, Cuaron, who had supplied the drugs to Neet. Appellant expected Neet to return to the appellant's home within an hour. Law enforcement personnel were concerned that evidence would be destroyed if Neet did not return as scheduled. At 2:55 p.m., the agents made the warrantless search in question.

The court, in upholding the admissibility of the fruits of the search, stated at page 590:

> It is apparent from Rule 41(c)(2) that more than a simple telephone call is required in order to obtain a warrant based upon oral testimony. We conclude that the time constraints in this case justified the officers in proceeding without a warrant. The agents had reasonable grounds to believe Cuaron might become alarmed and either destroy the additional cocaine or leave the cocaine and the $8,000 if Jon did not return in the time necessary to travel to the Boulder Inn, make the transaction, and return to Cuaron's house with the money. See *Baker,* 520 F.Supp. at 1083; see also *People v. Williams,* 200 Colo. 187, 613 P.2d 879, 882 (1980) (en banc). Contrary to *Baker,* however, the circumstances here did not provide enough time to safely seek and serve a telephone warrant before evidence might disappear. At the time of Jon's arrest, the officers could not count on even thirty minutes to obtain a telephone warrant because it had taken Jon less time than that to return to Cuaron's house after completing the first transaction.

Although it is a close question, we conclude that as in *Cuaron,* the record in this case discloses circumstances which justified action so immediate that insufficient time was available even to obtain a telephone warrant.

The record supports the finding of the trial court that the law enforcement personnel did not have probable cause to seek a warrant to search the premises until Culver delivered to them the substance believed to be methamphetamine oil. Until that time, the agents did not know whether the premises under surveillance were a contact point for the operators of the laboratory or whether they contained the laboratory itself.

The record indicates that it was a 15 to 40 minute drive from the store parking lot where Culver was arrested back to the lab.[8] The information from Nina Culver that she and her husband were expected to return quickly to the lab justified concern on the part of the officers that the suspects would become alarmed and attempt to flee or destroy evidence if the Culvers did not return promptly. However, this was only one of the reasons for urgent action. The sky was beginning to darken; this made it more difficult to maintain a close surveillance on the premises in the rural location. Also, the knowledge that four occupants had firearms raised the unhappy prospect that if the suspects became alarmed a gunfight could ensue with risk of injury to all participants. Also, the agents knew that the chemicals used in the manufacturing process were volatile. Culver, who was in custody, was believed to be the member of the enterprise with the expertise in chemistry. He had already indicated to the agents that he was having some difficulty in the manufacturing process. This combined to give the agents reason for concern that the unstable chemicals could explode.[9]

The availability of a telephone warrant should usually be addressed by the district

---

**7.** Id.

**8.** Compare motion record, pp. 12 and 63 with motion record, P. 90.

**9.** These are all appropriate factors to consider in weighing the exigency of the circumstances. See Marek, *Telephone Search Warrants: A New Equation for Exigent Circumstances,* 27 Clev.St.L.Rev. 35, 37 (1978).

court in ruling on the exigency of the circumstances. We conclude that under the imperative circumstances outlined above the trial court committed no error in denying the motion to suppress and it is unnecessary to remand for further findings.[10]

## III. OTHER CONTENTIONS

Appellant Berick assigns two additional errors.

■ He argues that Count II of the indictment which charged him with the manufacture of Phenyl-2-Propanone (P–2–P) and Count III which charged him with the possession of P–2–P are multiplicitous. Appellant reasons that he possessed any controlled substance he manufactured.

This argument is without merit. The evidence was sufficient to establish both crimes. This court in *United States v. Lewis,* 621 F.2d 1382, 1390 (5th Cir.1980) and *United States v. Goodman,* 605 F.2d 870, 884, 885 (5th Cir.1979), held that the crime of manufacturing and possessing with intent to distribute have different elements and are separate and distinct crimes.

■ Berick also contends that the evidence was insufficient to convict him of the manufacture or possession of P–2–P. Berick argues that he is not a chemist and that while he may have conspired to manufacture methamphetamine he was unaware of the nature of P–2–P, that it was a controlled substance or that it was in the laboratory.

A defendant need not know the exact nature of the substance in his custody in order to be convicted of possession of a controlled substance.[11]

The evidence established that Berick admitted that he had previously been associated with a methamphetamine laboratory and had assisted in the manufacture of methamphetamine. Considering Berick's experi-

ence, the trial court was free to reject Berick's statement that he was unaware of the nature of the chemicals in the laboratory. The evidence is sufficient to sustain the conviction on all counts.

## IV. CONCLUSION

For the reasons stated, we conclude that the convictions should be affirmed.

AFFIRMED.

---

**10.** Although we are upholding the validity of warrantless search in this case, we are troubled by the testimony of DEA agent Riggsbee (motion record, pp. 34–37) and the statement by Assistant U.S. Attorney Pierce (motion record, P. 164) that the telephone warrant had never been used or encouraged in the Western District of Texas. The government should actively encourage its law enforcement agents to seek

search warrants whenever possible and by any available means provided by the rules. Judicial officers should cooperate to the utmost in promoting this policy.

**11.** *United States v. Rodriguez,* 588 F.2d 1003 (5th Cir.1979); *United States v. Meneses-Davila,* 580 F.2d 888, 896 (5th Cir.1978).