**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-7061
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STANLEY MARSHAN LANG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____
(November 22, 1993)

Before POLITZ, Chief Judge, REAVLEY, and EMILIO M. GARZA, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:

Stanley Marshan Lang was convicted of possession of five grams
of crack cocaine with intent to distribute, in violation of 21
U.S.C. § 841(b)(1)(B) (1988).  Lang contends on appeal that the
district court erred in submitting the question of the cocaine's
admissibility to the jury.  Concluding that the district court, and
not the jury, should have decided whether the cocaine was
admissible under the plain view exception to the warrant
requirement, we vacate Lang's conviction and remand for a new
trial.

# I

On July 23, 1991, Ernest Blackley of the Greenville Police Department received an anonymous tip that drugs were hidden within a trash container inside the Mad Russian, a Greenville night club. Without securing a warrant, Blackley went to the night club accompanied by fellow officers Melton Young, Kenny Trader, Dondi Gibbs, and Joe Hart. Blackley, the first of the officers to arrive, proceeded to the rear of the building where he searched the trash containers with the permission of the owner. No contraband was found. Officer Trader, who was following closely behind Blackley, observed Lang walking "at a very fast pace" toward the front door. According to Trader, Lang "appeared to be very nervous" and was acting "real suspicious like." Based on these observations, Trader stopped Lang and asked him to place his hands on his head so that Trader could perform a pat down for weapons.[1] Lang refused to stand still. Officer Young, realizing that Trader was having difficulty with Lang, offered his assistance in performing a pat down. While Lang was bending and twisting, officer Young allegedly saw within Lang's shirt pocket an open Bayer aspirin box containing white tissue, plastic bags, and within one of those plastic bags "a couple of rocks of cocaine." Officer Young immediately seized the aspirin box.

---

[1] *See Terry v. State of Ohio,* 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85, 20 L. Ed. 2d 889 (1968) (holding that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."). We do not address the validity of the *Terry* search.

Lang was subsequently charged with possessing with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1)(B). At trial, Lang moved to exclude the cocaine seized without a warrant from his pocket.[2] The district court carried Lang's objection forward with the trial. Officer Young proceeded to testify that while Lang was twisting and turning, he was able to see a couple of rocks of cocaine in a plastic bag located inside the aspirin box. After the government finished presenting its evidence, Lang renewed his motion to exclude the cocaine and also moved for a judgment of acquittal. The government argued that Young did not require a warrant to seize the aspirin box containing the cocaine because Young was able to see the cocaine in plain view during his pat down of Lang.[3] Although finding it unlikely that a person would carry cocaine within plain view in his shirt pocket and that officer Young could see the cocaine within plain view, the court was unwilling to state at that time that officer Young was committing perjury. The district court therefore stated "that it was going to accept

_____

[2]    *See, e.g., Terry,* 392 U.S. at 20, 88 S. Ct. at 1879 (repeating the well-established rule that "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure, [and] that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances" (citations omitted)); *United States v. Jeffers,* 342 U.S. 48, 51, 72 S. Ct. 93, 95, 96 L. Ed. 59 (1951) ("Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes. Only where incident to a valid arrest, or in "exceptional circumstances," may an exemption lie, and then the burden is on those seeking the exemption to show the need for it." (citations omitted)).

[3]    *See Harris v. United States,* 390 U.S. 234, 236, 88 S. Ct. 992, 993, 19 L. Ed. 2d 1067 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."); *see also Texas v. Brown,* 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983).

[officer Young's] testimony for what it is in the record at this time."  The court also denied Lang's motion for judgment of acquittal.  During the jury instruction conference the district court informed the parties that it was submitting to the jury the question whether the cocaine was within plain view of officer Young.  By rendering a guilty verdict, the jury implicitly answered that question in favor of the government.  The district court entered judgment in accordance with the jury's verdict, from which Lang filed a timely notice of appeal.

## II

Lang contends that the district court erred in submitting to the jury the question of whether the cocaine was admissible under the plain view exception to the warrant requirement.  Rule 104 of the Federal Rules of Evidence governs preliminary questions of admissibility.  That rule provides:

> (a) Questions of admissibility generally.  Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b).  In making its determination it is not bound by the rules of evidence except those with respect to privileges.

> (b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

The cocaine's relevancy did not depend upon the fulfillment of a condition of fact, as the cocaine would have been relevant to show Lang's guilt of the charged offense notwithstanding whether officer

-4-

Young saw the cocaine in plain view. Although relevant, the cocaine would have been excluded for policy reasons underlying the Fourth Amendment.[4] Consequently, the preliminary question of whether officer Young saw the cocaine in plain view was within the sole province of the district court.[5]

The government does not dispute that the district court alone should have decided the admissibility question. It argues, rather, that because the district court itself ruled that the cocaine was admissible, the submission of the admissibility question to the jury did not prejudice Lang.[6] We disagree. The record reveals that rather than making its own conclusive finding that officer Young saw the cocaine in plain view, the district court left that requisite determination to the jury. The following relevant portions of the record provide:

---

[4] *See Terry,* 392 U.S. at 12, 88 S. Ct. at 1875 (stating that the rule excluding evidence seized in violation of the Fourth Amendment "is the only effective deterrent to police misconduct in the criminal context, and that without it the constitutional guarantee against unreasonable searches and seizures would be a mere `form of words'" (citing *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S. Ct. 1684, 1692, 6 L. Ed. 2d 1081 (1961))).

[5] *See United States v. James,* 590 F.2d 575, 579 (5th Cir.) (stating that under Fed. R. Evid. 104, "the judge alone decides preliminary questions which relate to the competence of evidence, and the jury decides preliminary questions as to the conditional relevancy of the evidence"), *cert. denied,* 442 U.S. 917, 99 S. Ct. 2836, 61 L. Ed. 2d 283 (1979).

[6] *See United States v. Noll,* 600 F.2d 1123, 1128 (5th Cir. 1979) (holding that trial court did not commit reversible error when it submitted admissibility of evidence question to jury because the trial court had independently decided the question); *see also United States v. Monaco,* 702 F.2d 860, 878 (11th Cir. 1983) (holding that identical error did not prejudice defendant because "by giving [the] instruction, the judge merely gave the jury the opportunity to overturn his own ruling"); *United States v. Nickerson,* 606 F.2d 156, 158 (6th Cir.) (holding that identical error did not prejudice defendant because it merely gave the defendant "the benefit of the jury's consideration of admissibility" or a "second bite at the apple" (attribution omitted)), *cert. denied,* 444 U.S. 994, 100 S. Ct. 528, 62 L. Ed. 2d 424 (1979).

THE COURT:  Well, it's))it's very unlikely in the Court's opinion that a man who has crack cocaine in his shirt pocket and is in a situation where four or five officers come into a night club where he is and don't focus on him at that time is going to keep the box in his pocket open where tissue paper is sticking out and plastic bags [are] sticking out and visible walking around in a night club with police officers there when he has time to put it back, stuff it down in his pockets.  He would have to be stupid to do that.  I don't know what the defendant's IQ is, I have never heard him say anything, and I don't know anything about him, but I know if he did that, he is stupid.

The box is very small))I mean, it has a very small opening on it.  For those plastic bags and cocaine to be sticking out, they would have to be sticking out the top above his shirt pocket and at least visible through the top of the shirt pocket from above the shirt pocket. However, that is the sworn testimony of the officer, and its very unusual for the Court, and I don't feel *at this time* that I am going to or should say that he is committing perjury and he is lying under oath in saying he saw something that he did not see, so, therefore, I am going to accept his testimony for what it is in the record *at this time,* and the motion for [judgment of acquittal] at this time will be denied.  *I might submit that to the jury to let them pass on it also.*  At this time, I am suppose[d] to take everything in the light most favorable to the government at this stage of the proceedings,[7] and that is what I am doing, according to the law, but I might let the jury consider that question also.

* * *

[THE COURT DURING THE JURY INSTRUCTION CONFERENCE:]  Now, I mentioned about the search question possibly presenting that to the jury.  I am not sure if that's procedurally correct to do that. It puts in issue the credibility of the police officer *instead of me making a final determination of that, letting the jury make a determination of it,* instructing them in order for the search of the defendant to have been legal, something to this effect, then the officer must have been able to see what he believed to be rock, rocks of crack cocaine sticking out of his shirt out of the box, and if you believe that that is the case, then the search was legal and you may consider the evidence.

---

[7]     *See infra* note 9.

[THE COURT CHARGING THE JURY:]  In order for the search of the defendant by the officers to have not violated the Fourth Amendment of the United States Constitution prohibiting unreasonable searches and seizures of a person, the officers must have seen the alleged rocks of crack cocaine in the defendant's shirt pocket before they searched him, as claimed by the police officer.  The observation of the illegal cocaine would have given the officers probable cause to believe that a crime was being committed, and therefore, the legal authority to search the defendant and charge him with the fruits of that search here, the crack cocaine.

If, however, the officers could not and did not see the alleged rocks of crack cocaine in the box which was in the defendant's pocket prior to the time they searched the defendant and removed the box from the defendant's pocket, . . . the fruits of that search are not to be considered by you in arriving at your verdict, and in that case you should return a verdict of not guilty.

Record on Appeal vol. 2, at 145-46, 178-79, 210-11 (emphasis added).  Because the record indicates that the district court, at most, made only an initial determination of whether officer Young saw the cocaine in plain view and left the ultimate determination of that question to the jury,[8] we reject the government's argument.[9]

---

[8]      That the district court never made its own conclusive finding of whether officer Young saw the cocaine in plain view is further evidenced by the court's order denying Lang's post-verdict motion for judgment of acquittal, or in the alternative, new trial.  There, the court noted that "the question of whether the contraband which was the subject of this case was legally seized from the defendant was mixed question of law and fact and was *presented to the jury for a finding as to whether the contraband was in plain view*."  Record Excerpts tab 13 (emphasis added).

[9]      We further point out that it is unclear from the record whether the district court relied upon an incorrect view of the law when making its initial determination to admit the cocaine.  Immediately after admitting the cocaine and denying Lang's motion for judgment of acquittal, the court stated that it was "suppose[d] to take everything in the light most favorable to the government at this stage of the proceedings."  Although that standard may be the correct one when deciding a motion for judgment of acquittal, *see* Fed. R. Crim. P. 29(a), it is the incorrect one when deciding whether to admit evidence seized under an exception to the warrant requirement.  *See United States v. Berick,* 710 F.2d 1035, 1037 (5th Cir. 1983) (stating that the government has the burden of establishing exigent circumstances to excuse a warrantless search).

### III

For the foregoing reasons, we VACATE Lang's conviction and REMAND for a new trial.


REAVLEY, Circuit Judge, dissenting:

The district judge accepted the testimony of the arresting officers and then gave the jury the opportunity to reject his decision of admissibility.  That was improper, but it certainly caused no harm to defendant.  The jury accepted the testimony too. The majority does not answer the cases stated in its own footnote six.  I would affirm.