

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-13-2005

# USA v. Hoffman

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1449

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Hoffman" (2005). *2005 Decisions.* Paper 557.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/557

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 04-1449

UNITED STATES OF AMERICA

v.

MARCELLAS HOFFMAN,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cr-00169-2)
District Judge: Honorable Robert F. Kelly

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2005

Before: SLOVITER, BARRY and SMITH, Circuit Judges

(Filed September 13, 2005)

OPINION

SLOVITER, <u>Circuit Judge</u>.

**I.**

Appellant Marcellas Hoffman appeals following his conviction by a jury of various drug and firearms charges. Because the parties are familiar with the case, we will only recite the pertinent facts.

Juan Rosado ran a multi-million dollar drug organization distributing cocaine and heroin in Philadelphia and the surrounding areas. Hoffman was one of Rosado's distributors. Hoffman began purchasing heroin and cocaine from Rosado in the summer of 2000. At the first drug sale, Hoffman bought 250 grams of cocaine for $7,000, paying cash for half the drugs and taking the other half on consignment. A few days later Hoffman told Rosado that he had "finished with the drugs" and that he wished to purchase more. App. at 200. At this second meeting Hoffman brought the $3,500 due for the drugs he had purchased on consignment and an additional $7,000 to buy more drugs. At a later meeting, Hoffman informed Rosado that "he could get rid of a truckload of drugs in Virginia and that he just needed somebody that could supply him with good quantities and good price." App. at 201. Hoffman thereafter bought narcotics from Rosado on many occasions for sale in Virginia.

In early 2001, Hoffman decided to rob Rosado and enlisted the help of a former co-worker, Gary Oliver. Hoffman telephoned Rosado and told him that he was coming to Philadelphia with $30,000 to purchase 500 grams of heroin and a kilogram of cocaine.

2

Oliver testified that on the morning of January 20, 2001, he drove to Hoffman's house to pick him up and that when Hoffman came out of his house he was carrying a "bag with a couple of handguns in it and one of the butts of the guns was hanging out." App. at 332. The two men then drove to Camden, New Jersey where they met Hoffman's cousin "Casbah." The three men then drove to meet Rosado at Porky's Point restaurant.

Rosado picked up 390 grams of heroin for Hoffman, but not the cocaine requested because he had decided he was not ready "to do any more business with [Hoffman]." App. at 203. Rosado decided to meet Hoffman at 5911 Frontenac Street, Rosado's stash house. That evening, Rosado put the heroin in his truck and drove with his wife and mother-in-law to the Frontenac Street house. He sent David Vasquez, one of his employees, to meet Hoffman at Porky's Point and bring him back to the Frontenac Street house.

Vasquez did so and told Hoffman, Oliver, and Casbah to follow him to Frontenac Street. After arriving there, Hoffman gave one gun to Oliver, one to Casbah, and kept one for himself. Hoffman and Oliver followed Vasquez into the house while Casbah waited outside. Rosado had not yet arrived. Once inside, Hoffman gave Vasquez only $16,000, not the agreed upon $30,000. After Vasquez demanded the remaining $14,000, Hoffman and Oliver pointed their guns at Vasquez, and Hoffman handcuffed him and demanded to know where the drugs and money were located. Vasquez answered that Rosado was bringing the drugs, and he was then thrown on the floor and pistol whipped

3

by Hoffman, who shot him in the leg.

When Rosado arrived, he met Hoffman and they went to the second floor where Hoffman pointed a gun at Rosado, showed him a badge, told him he was under arrest and handcuffed him. Hoffman then demanded the drugs. Rosado told him the drugs were in the truck and that he would get them. Before they went to the truck, Hoffman searched Rosado and took $1,000 in cash, his credit cards, and his license. At some point during this time Hoffman also took 800-900 grams of cocaine from the kitchen.

After exiting the Frontenac Street house, Hoffman placed Rosado in his truck with Casbah and walked towards Rosado's truck. Rosado freed himself, jumped out of Hoffman's truck, and ran towards his own truck. Hoffman chased Rosado and fired at him, hitting him once in the buttocks and grazing his leg. Rosado's wife began driving the truck towards the two men. Hoffman shot at the truck but ran out of bullets. Rosado then jumped into the truck and drove away, but Rosado's wife noted the license plate number of Hoffman's truck.

A short time later, Rosado's truck was pulled over by police. Rosado informed the police he had been the victim of a shooting and his wife gave the police Hoffman's license plate number. Based on information received from Rosado, the police then searched the Frontenac Street house, where they discovered Vasquez and Oliver, whom they detained, and recovered drugs, drug paraphernalia, and a loaded firearm.

That evening, a police officer observed Hoffman's truck run a red light in Camden,

4

New Jersey. The officer pulled Hoffman over and, as he approached, observed Hoffman "making all kind[s] of movements in the vehicle." App. at 400. The officer ordered Hoffman to place his hands on the wheel, but Hoffman failed to comply. The officer then asked for Hoffman's documentation. Hoffman responded that he had left the documents at a friend's house. The officer ordered Hoffman to exit the car. The officer testified that Hoffman became "rambunctious" and began to "push off." The officer then conducted a pat down and felt something in Hoffman's upper left-hand pocket. The officer shined his flashlight into the pocket and was able to see it was a box of hollow-point ammunition. After securing Hoffman and Casbah, who was in the truck, the officer performed an inventory search of the truck and found a loaded gun and several credit cards in the name of Roberto Roman, the alias used by Rosado. The officer took Hoffman into custody. He later posted bail and was released.

On January 25, 2001, the officer who had arrested Hoffman learned that there may have been an outstanding warrant for Hoffman or his vehicle. The officer went to the address Hoffman had given him and observed Hoffman on the street. When Hoffman saw the police he started to run but was caught and arrested. A federal warrant was issued for Hoffman on February 1, 2001, and he was transferred from state to federal custody on April 30, 2001. He was arraigned on May 7, 2001.

Hoffman's trial began on February 25, 2002. Prior to trial, the District Court had ruled that the government could not introduce evidence of Hoffman's prior drug dealings

with Rosado. Nevertheless, on the second day of trial, the government elicited testimony from which the jury could infer that Hoffman and Rosado had had prior drug dealings. As a result, the District Court granted a mistrial. Before the case was retried, Hoffman moved to dismiss the indictment on double jeopardy grounds. The District Court denied that motion and we affirmed on November 26, 2002. United States v. Hoffman, 52 Fed. Appx. 591 (3rd Cir. 2002). The mandate was not issued until January 23, 2003.

On March 6, 2003, the grand jury returned a second superseding indictment against Hoffman, this time containing facts concerning Rosado's prior drug transactions with Hoffman. At the retrial, Hoffman was convicted on all counts.[1] He was sentenced to life imprisonment on counts one, two, and six, ten years on count three, twenty years on count four, and twenty-five years on count five.[2]

Hoffman appeals, claiming (1) there was insufficient evidence to support the

---

[1] The six counts were as follows: (1) Conspiracy to distribute and possess with intent to distribute in excess of 100 grams of heroin and in excess of 500 grams of cocaine in violation of 21 U.S.C. § 846; (2) Attempting to possess with intent to distribute in excess of 100 grams, approximately 390 grams, of heroin in violation of 21 U.S.C. § 841(a)(1); (3) Using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); (4) Hobbs Act Robbery, in violation 18 U.S.C. § 1951; (5) Using and carrying a firearm during and in relation to a violent crime, in violation of 18 U.S.C. § 924(c); and (6) Being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

[2] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

6

conviction; (2) the government failed to prove a commerce clause nexus; (3) the conviction subjected him to double jeopardy; and (4) his sentence was unconstitutional in light of United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). In addition, Hoffman argues that his Fourth Amendment rights were violated, his Speedy Trial Act and Fifth Amendment due process rights were violated, and his Sixth Amendment right to effective assistance of counsel was violated.

## II.

Hoffman argues that his convictions on the drug conspiracy charges and firearms charges were not supported by sufficient evidence. "In reviewing a jury verdict for sufficiency of the evidence, we must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." United States v. Haywood, 363 F.3d 200, 204 n.3 (3d Cir. 2004) (internal quotations and citation omitted). Viewing the evidence in that light, we conclude that the government did provide sufficient evidence to prove the existence of a conspiracy, not merely a buyer-seller relationship. United States v. Gibbs, 190 F.3d 188 (3d Cir. 1999).

In Gibbs, we held that the essential elements of a conspiracy are: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal. Id. at 197; see also United States v. Pressler, 256 F.3d 144, 147 (3d Cir. 2001). The government presented sufficient evidence

7

to satisfy each of these elements. For example, there was evidence that Rosado ran a large cocaine and heroin distribution organization, that Hoffman distributed drugs in Virginia, and that Hoffman wanted Rosado to be his source for the drugs he sold in Virginia. There was also evidence of multiple drug transactions between the two men at which Hoffman purchased large amounts of cocaine and heroin, and evidence of trust as shown by the fact that Rosado permitted Hoffman to purchase some of the drugs on credit. Finally, the jury heard evidence that Hoffman was aware of other parts of Rosado's drug conspiracy, such as where he obtained his drugs and the identities of some of the employees he used to distribute them, and that Hoffman frequently called Rosado to agree upon drug purchase amounts, prices, meeting times, and places. A rational jury could have found a conspiracy to distribute cocaine and heroin beyond a reasonable doubt.

We reject Hoffman's contention that there was a variance in the proof presented. The evidence offered at trial did not prove facts "materially different" from those alleged in the second superseding indictment. United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996).

There was also sufficient evidence to find that Hoffman possessed the drugs with intent to distribute. However, the challenge to the sufficiency of evidence was not raised in a timely motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and therefore we review only for plain error. United States v.

8

Powell, 113 F.3d 464, 466-67 (3d Cir. 1997). We find none.

Hoffman also argues that there was insufficient evidence to support his conviction under 18 U.S.C. § 924(c)(1)(A) for either "carrying and use during and in relation to a drug trafficking offense" (count three) or carrying and use "during and in relation to a crime of violence" (count five). Once again, we review for plain error. Powell, 113 F.3d at 466-67. We find none.

Under 18 U.S.C. § 924(c), anyone who "uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime," be sentenced to a term of imprisonment of not less than five years. There was ample testimony that Hoffman "actively employed" a firearm during the commission of a drug trafficking crime and a crime of violence. Bailey v. United States, 516 US 137, 144 (1995). Oliver, Vasquez, and Rosado testified that Hoffman carried three firearms to the site of the robbery, that he handed two of these guns to Casbah and Oliver to assist him in the robbery, that he pointed a handgun at Vasquez and shot him in the leg, that he pointed a gun at Rosado and shot him in the buttocks and leg, and that he fired shots at Rosado's wife when she was driving Rosado's truck. The testimony of these witnesses provides sufficient evidence to support Smith's firearm conviction under 18 U.S.C. § 924(c).

Hoffman also argues that there was insufficient evidence to support his conviction for being a felon in possession of a firearm. Hoffman did not file a Rule 29 motion on

9

this issue and we review for plain error. Powell, 113 F.3d at 466-67. Hoffman argues that there was insufficient evidence to find that he was in possession of the firearm found in the console of his truck after he was arrested for running a red light because it was not within his control. Hoffman's argument is without merit. See New York v. Belton, 453 U.S. 454, 460 (1981) (holding that if firearm is in passenger compartment of vehicle and is accessible, it is within control of driver). It follows that none of Hoffman's contentions challenging his convictions on the basis of sufficiency of evidence are persuasive.

## III.

Hoffman argues that the government failed to prove that his activities affected interstate commerce and that, as a result, his convictions for conspiracy to commit robbery under the Hobbs Act, 18 U.S.C. § 1951, must be reversed. Because Hoffman did not file a Rule 29 motion regarding this issue, we review for plain error. Powell, 113 F.3d at 466-67. Hoffman relies on United States v. Lopez, 514 U.S. 549 (1995). However, we have held that drug trafficking affects interstate commerce. United States v. Orozco, 98 F.3d 105, 107 (3d Cir. 1996). Interference with a drug dealer's business has been held to violate the Hobbs Act because of the interstate character of drug dealing. United States v. Cox, 942 F.2d 1282, 1286 (8th Cir. 1991). Accordingly, a conspiracy to rob drug traffickers may affect interstate commerce. See United States v. Clausen, 328 F.3d 708, 711 (3d Cir. 2003) (holding that conviction for Hobbs Act robbery is constitutional so long as it has de minimis impact on interstate commerce); United States

10

v. Jones, 30 F.3d 276, 285 (2d Cir. 1994) (holding that robbery of proceeds intended for purchase of cocaine affected interstate commerce). Therefore, we will affirm the conviction for conspiracy to commit a Hobbs Act robbery.

**IV.**

Hoffman contends that counts two, three, four, and five were multiplicitous and thereby exposed him to double jeopardy. Hoffman did not file a Rule 29 motion regarding this issue; we thus review for plain error. Powell, 113 F.3d at 466-67. The rule governing multiplicity in an indictment was set forth in Blockburger v. United States, 284 U.S. 299 (1932): "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Id. at 304; see also United States v. Hodge, 211 F.3d 74, 78 (3d Cir. 2000) ("To determine whether the offenses grow out of the same occurrence, we apply the test set forth in Blockburger.").

In the present case Hoffman concedes that "all these crimes have some different elements," but argues that "realistically, [they] all turn on the same facts – the Frontenac Street robbery." Appellant's Br. at 44. The contention that all the charges are "realistically" related to the Frontenac Street robbery is, however, irrelevant. Because each charge contains different elements, the counts are not multiplicitous and did not subject Hoffman to double jeopardy.

11

**V.**

Hoffman argues that the District Court erred in denying his motion to suppress the gun recovered from his truck that was found during the search following his arrest. We review the motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

We reject Hoffman's argument that there was insufficient cause for the police officer to examine the box he felt during the pat down, to arrest Hoffman, and to search his truck. The officer was permitted to conduct a pat down of Hoffman and search the area within his control after Hoffman made numerous suspicious movements and continued to do so even after being ordered to put his hands on the steering wheel. New York v. Belton, 453 U.S. 454 (1981); Terry v. Ohio, 392 U.S. 1 (1968); see also United States v. Murphy, 261 F.3d 741(8th Cir. 2001).

As a result of the pat down, the officer felt a box-like object in Hoffman's pocket, and was able to determine that it was a box of hollow-point bullets by shining his flashlight at Hoffman's pocket. Therefore, the box is admissible under the plain view exception to the warrant requirement. See generally United States v. Lang, 8 F.3d 268 (5th Cir. 1993). Hoffman was arrested only after the officer discovered the bullets, which are contraband in the state of New Jersey. Accordingly, the officer had probable cause to arrest Hoffman. The officer had reasonable suspicion to conduct the pat down and the

12

bullets were contraband in plain view.

## VI.

Hoffman argues that the District Court should have dismissed the second superseding indictment for violation of the Speedy Trial Act and that the delay between his arrest and the second superseding indictment violated his due process rights.  The District Court's construction of the statutory provisions of the Speedy Trial Act is subject to plenary review and the Court's conclusions of fact are reviewed for clear error.  See United States v. Dyer, 325 F.3d 464, 467 (3d Cir. 2003).

Hoffman's argument relates to the period between the first trial and the second. We affirmed the District Court's order denying Hoffman's motion to dismiss on double jeopardy grounds on November 26, 2002, but we did not issue the mandate until January 23, 2003.  We reject Hoffman's argument that the government was required to try him within seventy days of our opinion.  The Speedy Trial Act requires that "trial shall commence within seventy days from the date the action occasioning the retrial becomes final."  18 U.S.C. §§ 3161(e).  We have held that "[t]he action of a court of appeals does not become final until its mandate is issued."  United States v. Felton, 811 F.2d 190, 198 (3d Cir. 1987) (en banc).

Hoffman moved to dismiss his second superseding indictment on Speedy Trial grounds on March 10, 2003, the date he was arraigned.  On that date, only forty-six days had passed since the mandate had issued.  His motion argued that the seventy days had

13

passed, but he used the November 26, 2002 opinion as the inception of that time period. The District Court held a hearing on Hoffman's motion on March 13, 2003, reserved decision, and on April 16, 2003, denied the motion because the seventy-day period had not expired.[3]

On June 23, 2003, the Court entered an order pursuant to 18 U.S.C. § 3161(h)(8)(A) continuing the trial date on the basis of the judge's findings that the ends of justice served by the continuance outweighed the best interest of the public and the defendant in a speedy trial. Because Hoffman did not raise a Speedy Trial claim after May 10, 2003 (the seventieth day of the seventy-day Speedy Trial period) and before June 23, 2003 (the date of the continuance), the trial, which commenced on October 7, 2003, did not violate the Speedy Trial Act.

Hoffman also argues that the government violated the Speedy Trial Act because it impermissibly delayed securing the second superseding indictment and thereby violated Hoffman's due process rights. The Due Process Clause of the Fifth Amendment requires dismissal of an indictment "if it [is] shown . . . that the pre-indictment delay . . . caused substantial prejudice to [the accused's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971). In the present case Hoffman has failed to allege any prejudice

---

[3] The period of March 10, 2003 to April 16, 2003 (the time period between the motion and decision) is excluded from the seventy-day Speedy Trial period under 18 U.S.C. § 3161(h)(1)(F).

14

caused by the purported delay and has failed to show that the delay was used to gain a tactical advantage. The District Court recognized that the second superseding indictment was delayed due to the need to conduct further investigation, not to gain an improper tactical advantage or to prejudice Hoffman. See United States v. Sasso, 59 F.3d 341, 352 (2d Cir. 1995) (finding post-indictment action appropriate to prepare superseding indictments against persons already charged).

Lastly, Hoffman argues that the government violated the Speedy Trial Act because his arrest by New Jersey state police in January 2001 was pursuant to federal charges and that he was thus in federal custody for purposes of the Speedy Trial Act. However, as the District Court correctly recognized, the Speedy Trial Act did not apply until Hoffman was taken into federal custody on April 30, 2001. Therefore, because Hoffman's initial appearance and arraignment were conducted within thirty days of being taken into federal custody, there was no violation of the Speedy Trial Act.[4]

---

[4] Hoffman also raises an ineffective assistance of counsel claim. We have repeatedly stated that Sixth Amendment claims of ineffective assistance of counsel should ordinarily be raised in a collateral proceeding pursuant to 28 U.S.C. § 2255 rather than on direct appeal. United States v. Oliva, 46 F.3d 320, 325 (3d Cir. 1995). Hoffman's claim does not fall into the narrow exception we have recognized to this rule. See Government of the Virgin Islands v. Zepp, 748 F.2d 125, 133-134 (3d Cir. 1989). We thus deny Hoffman's ineffective assistance of counsel claim without prejudice to his ability to raise the issue in an appropriate collateral proceeding.

**VII.**

At the time of Hoffman's sentencing, the District Court did not have the benefit of the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005). Following <u>Booker</u>, we held in <u>United States v. Davis</u>, 407 F.3d 162 (3d Cir. 2005) (en banc), that a defendant's substantial rights may have been affected where the District Court erred by treating the Guidelines as mandatory rather than advisory. Therefore, having concluded that sentencing issues that arise in light of the <u>Booker</u> decision are best determined by the District Court in the first instance, <u>Davis</u>, 407 F.3d at 165-66, we will affirm Hoffman's conviction but vacate the sentence and remand for re-sentencing.