132 P.3d 455

STATE of Idaho, Plaintiff–Respondent,

v.

Corey E. STEFANI, Defendant–Appellant.

No. 31227.

Court of Appeals of Idaho.

Dec. 21, 2005.

Review Denied April 5, 2006.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Corey E. Stefani appeals his conviction for possession of methamphetamine, asserting that his trial was infected by prosecutorial misconduct, that the court gave an erroneous jury instruction, and that there was insufficient evidence to support the guilty verdict. We find no error and therefore affirm.

## I.

## FACTUAL & PROCEDURAL BACKGROUND

While police were conducting a routine investigation of a traffic accident, a bystander informed them that Stefani, a passenger in one of the vehicles, was behaving strangely. According to the bystander, before police arrived at the scene, Stefani paced nervously and then walked to a nearby garbage can and plunged his arm into it. The bystander said Stefani had not casually discarded something, but had inserted his arm up to his shoulder and appeared to be moving things inside the trash can. An officer consequently searched the garbage can and found a small glass pipe. A later test revealed that there was methamphetamine residue in this pipe. The police also patted Stefani down for weapons and found in his clothing a second pipe used for smoking marijuana. Based on the pipe with methamphetamine residue found in the garbage can, Stefani was charged with possession of methamphetamine, Idaho Code § 37–2732, and ultimately was convicted following a jury trial.

Stefani contends that two errors occurred during the trial. First, he says the prosecutor committed misconduct by commenting on Stefani's silence when he was confronted with the methamphetamine pipe. Second, he argues that the court improperly instructed the jury that the State need not prove that

Stefani knew the substance he possessed was methamphetamine. Lastly, Stefani asserts that the trial evidence was insufficient to support a finding of guilt.

## II.

## ANALYSIS

### A. The Prosecutor's Comment on Stefani's Silence

■ Stefani argues that the prosecutor committed misconduct during rebuttal closing argument by commenting on Stefani's silence when police confronted him with the methamphetamine pipe.

Although Stefani posits error only on the rebuttal closing argument, the subject of Stefani's silence concerning the methamphetamine pipe arose several times throughout the trial. In the State's case-in-chief, an officer testified, without defense objection, that when the officer asked Stefani if the methamphetamine pipe belonged to him, Stefani did not answer but merely looked away. Defense counsel developed the point on cross-examination of the officer in an effort to support Stefani's assertion that the pipe was not his:

Defense Counsel: Make it perfectly clear. Mr. Stefani did not say that [the methamphetamine pipe found in the trash] was his?

Officer: That's correct.

Defense Counsel: He denied that?

Officer: He deny—he didn't deny it. He—

Defense Counsel: He just didn't say anything, correct?

Officer: Didn't say anything, correct.

. . . .

Defense Counsel: He didn't deny possession of [the second marijuana pipe found in his clothing], did he?

Officer: No, he did not.

Defense Counsel: In fact, he freely admitted that was a pipe and it was on him?

Officer: That's correct.

Later, Stefani himself testified that during the police investigation he took responsibility for the marijuana pipe but told police that the methamphetamine pipe did not belong to him. Thus, he developed a defense that, having admitted ownership of the marijuana pipe, if the methamphetamine pipe had been his, he would have admitted that also. Then, in rebuttal closing argument, the prosecutor made the following statement:

> One of the things to consider about Mr. Stefani's actions at the scene. I believe the testimony of the officer was that, I think, they at least tried to show to Mr. Stefani, show him the pipe or ask him about it, and Mr. Stefani wouldn't look at it. Wouldn't answer or anything like that. And that's—if you were confronted, if somebody walked up to you and said hey, you just dropped this meth pipe out of your pocket or something like that you would probably go around and go what, what are you talking about. That's not mine. I don't do anything like that.

> But he didn't say anything like that at the scene. I think the officer said he just looked away. Just looked away. Why would you do that if it wasn't yours. Why wouldn't you say that's not mine. The marijuana pipe is mine, but that's not mine. We didn't hear that.

Stefani's counsel objected to this argument on the ground that it was an impermissible comment on Stefani's exercise of his right to remain silent. The district court effectively sustained the objection, saying, "Well, there isn't any obligation of a defendant to speak. So maybe we could go on to another point." Defense counsel did not ask for a corrective instruction, but stock jury instructions informed the jury that counsel's arguments do not constitute evidence and that they were not to consider a statement if the judge had sustained an objection to it.

Stefani contends that the prosecutor's comment was so prejudicial that it was not remedied by the judge's ruling and the related jury instructions. We recently articulated the governing law on this point in another case where the defendant contended that unfair prejudice from prosecutorial misconduct could not be undone, even where an objection

was sustained and a curative instruction was given. In *State v. Sanchez*, Docket No. 30202, 2005 WL 2456751 (Ct.App. Oct.6, 2005), we said:

> Prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process. *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618, 630 (1987). To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. *Id.* . . . .

> . . . Prosecutorial misconduct rises to the level of fundamental error only if the acts or comments constituting the misconduct are so egregious or inflammatory that any ensuing prejudice could not have been be remedied by a curative jury instruction. *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990); *State v. Loveless*, 133 Idaho 160, 167, 983 P.2d 233, 240 (Ct.App. 1999). The rationale of this rule is that even a timely objection to such inflammatory statements would not have cured the inherent prejudice. *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct.App. 1998).

> Our inquiry is, thus, two-tiered. We first determine whether the prosecutorial conduct complained of was improper. *State v. Reynolds*, 120 Idaho 445, 448, 816 P.2d 1002, 1005 (Ct.App.1991). If we conclude that it was, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless. *Id.* Where the appellate court is able to declare that, beyond a reasonable doubt, the jury below would have reached the same result had the misconduct not occurred, the error is deemed harmless. *Id.* at 451, 816 P.2d at 1008.

A defendant's decision to exercise his or her right to remain silent, whether before or after arrest and *Miranda* warnings, cannot be used for the purpose of inferring guilt. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965); *State v. Strouse*, 133 Idaho 709, 713–14, 992 P.2d 158,

162–63 (1999); *State v. Moore,* 131 Idaho 814, 820, 965 P.2d 174, 180 (1998); *State v. Hodges,* 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. White,* 97 Idaho 708, 715, 551 P.2d 1344, 1351 (1976); *State v. Lopez,* 141 Idaho 575, 577, 114 P.3d 133, 135 (Ct.App. 2005); *State v. Kerchusky,* 138 Idaho 671, 677, 67 P.3d 1283, 1289 (Ct.App.2003). Nevertheless, a defendant who elects to waive this right and testify at trial may be impeached with evidence of his or her pre-arrest, pre-*Miranda* silence. *Jenkins v. Anderson,* 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86, 95 (1980); *Moore,* 131 Idaho at 820–21, 965 P.2d at 180–81. Where a defendant testifies to an exculpatory version of events and claims to have told the same version to police upon arrest, evidence of post-arrest silence may be used by the prosecution to contradict the defendant's version. *Doyle,* 426 U.S. at 619 n. 11, 96 S.Ct. at 2245 n. 11, 49 L.Ed.2d at 98 n. 11. *See also State v. Dougherty,* 142 Idaho 1, 4, 121 P.3d 416, 420 (Ct.App.2005) (evidence of defendant's silence admissible to rebut his testimony that law enforcement did not give him a chance to tell his side of the story).

■ Evidence of a defendant's pre-*Miranda* silence can also be used more broadly, not just to directly contradict a defendant's testimony that he spoke to police, but to more generally impeach a story the defendant has told on the witness stand. *Jenkins,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). In *Jenkins,* a defendant on trial for first degree murder testified that the killing was in self defense. On cross-examination of the defendant, the prosecutor elicited admissions that the defendant had not immediately reported to the police the alleged occurrence in which the defendant defended himself from an attack and that he had, rather, waited two weeks before reporting the matter to authorities. Through cross-examination and closing argument, the prosecutor attempted to impeach the defendant's credibility by suggesting that he would have spoken out sooner if he had killed in self defense. The United States Supreme Court held that this prosecutorial comment upon the defendant's silence neither violated his Fifth Amendment right to remain silent nor deprived him of fundamental fairness guaranteed by the Due

Process Clause. The Court held that the constitutional right to remain silent is not impermissibly burdened by allowing the credibility of a testifying defendant's story to be impeached with prior inconsistent statements and acts. With respect to the due process challenge, the Court distinguished *Doyle,* where it had held that a defendant may not be impeached by his choice to remain silent *after* receiving *Miranda* warnings. The Court noted that the *Doyle* rule rests upon the perception that it would violate due process to inform a person that he has a right to remain silent and assure him, at least implicitly, that his subsequent decision to remain silent cannot be used against him, and to then use that silence to impeach his trial testimony. *Jenkins,* 447 U.S. at 240, 100 S.Ct. at 2130, 65 L.Ed.2d at 95. Such a concern did not apply in *Jenkins,* the Court said, because no governmental action had induced the defendant to remain silent *before* arrest. *Id.*

The Supreme Court has adhered to and reiterated the *Jenkins* rule in subsequent cases, *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam) and *Brecht v. Abrahamson,* 507 U.S. 619, 628, 113 S.Ct. 1710, 1715, 123 L.Ed.2d 353, 366 (1993). In *Brecht,* the Supreme Court summarized its prior rulings on the subject as follows:

In *Doyle v. Ohio,* 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 98 we held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." This rule "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Wainwright v. Greenfield,* 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623, 629 (1986) (quoting *South Dakota v. Neville,* 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983)). The "implicit assurance" upon which we have relied in our *Doyle* line of cases is the right-to-remain-silent component of *Miranda.* Thus, the Consti-

tution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, *Jenkins v. Anderson,* 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86, 95 (1980), or after arrest if no *Miranda* warnings are given, *Fletcher v. Weir,* 455 U.S. 603, 606–07, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490, 493–94 (1982) (*per curiam*). Such silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty. *See* 447 U.S. at 239, 100 S.Ct. at 2129, 65 L.Ed.2d at 95.

*Brecht,* 507 U.S. at 628, 113 S.Ct. at 1715, 123 L.E.2d at 366. The *Brecht* Court thereafter held that the defendant, who testified at trial that his shooting of an individual had been an accident, was permissibly impeached with evidence that he did not mention anything about the shooting being an accident to an officer who found the defendant in a ditch, to the man who gave him a ride, or to officers who eventually arrested him.

The prosecutor's impeachment of Stefani's testimony with his pre-*Miranda* silence when officers confronted him with the methamphetamine pipe is indistinguishable from the impeachment technique approved by the Supreme Court in *Jenkins* and its progeny. Accordingly, we conclude that the prosecutor's conduct here was not fundamental error but, to the contrary, was permissible impeachment.

## B. Jury Instruction Regarding Stefani's Mental State

Stefani next contends that a jury instruction defining the elements of possessing methamphetamine misstated the law. Regarding the mental element of the offense, the instruction said that the State must prove that Stefani possessed methamphetamine, and "knew it was methamphetamine or a controlled substance." Stefani argues that the State was required to prove that he knew the substance he possessed was methamphetamine, not merely that he knew he possessed some controlled substance.

A challenge to a jury instruction presents a question of law which this Court reviews de novo. *State v. Avila,* 137 Idaho 410, 414, 49 P.3d 1260, 1264 (Ct.App.2002).

On appeal, jury instructions are viewed as a whole, not individually, to determine whether the jury was properly and adequately instructed on the applicable law. *State v. Rozajewski,* 130 Idaho 644, 646, 945 P.2d 1390, 1392 (Ct.App.1997). To require reversal of a conviction, instructional error must mislead the jury or prejudice the defendant. *State v. Hanson,* 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997).

Possession of a controlled substance in violation of I.C. § 37–2732(c) is a general intent crime requiring the intent to knowingly perform the proscribed act, that is, knowingly possess the substance. *State v. Blake,* 133 Idaho 237, 240, 985 P.2d 117, 120 (1999); *State v. Fox,* 124 Idaho 924, 926, 866 P.2d 181, 183 (1993). An individual's misapprehension about the nature of an illegal substance in his or her possession could take three forms, two of which have been addressed by our appellate courts. First, the individual might possess a substance knowing what it was, but unaware that it was classified as a controlled substance and that its possession was therefore unlawful. Such a mistake of law is not a defense. *Id.* Second, one might possess an illegal drug under the mistaken belief that it was a legal substance—for example possessing methamphetamine while truly believing that it was sugar. In such a case, the defendant's mistake of fact, if believed by the jury, requires an acquittal because the criminal intent element of the offense is not present. *Blake,* 133 Idaho at 242, 985 P.2d at 122; *State v. Tucker,* 131 Idaho 174, 178, 953 P.2d 614, 618 (1998) (Schroeder, J., specially concurring).

The third type of misapprehension, and the one at issue here, occurs when a person possesses a particular controlled substance while believing it to be a different controlled substance, as in possessing cocaine under the mistaken belief that it is methamphetamine. The Idaho appellate courts have not previously addressed whether this specific form of mistaken intent—intending to possess a different, but also illegal, substance—satisfies the mental element for a possession offense. Many courts throughout the country have held, however, that a person's gen-

eral knowledge that he or she possesses some type of controlled substance is sufficient to satisfy the intent element of the offense. For example, in *United States v. Lopez–Martinez*, 725 F.2d 471, 474 (9th Cir. 1984), the defendant, who was apprehended with a package of heroin, claimed to have believed that the package contained marijuana, and he objected to a jury instruction much like the one given here. The Ninth Circuit Court of Appeals noted the conduct criminalized by the relevant federal statutes was importing a controlled substance, and that the type of controlled substance was relevant only to the penalty. The court therefore held that a mistake of fact as to the exact nature of the controlled substance was not a defense to knowing possession. *In accord, United States v. Sua*, 307 F.3d 1150, 1155 (9th Cir.2002); *United States v. Ramirez–Ramirez*, 875 F.2d 772, 774 (9th Cir. 1989); *United States v. Gonzalez*, 700 F.2d 196, 200 (5th Cir.1983); *Commonwealth v. Rodriguez*, 415 Mass. 447, 614 N.E.2d 649, 653 (1993); *State v. Edwards*, 257 N.J.Super. 1, 607 A.2d 1312, 1313 (Ct.App.Div.1992); *State v. Engen*, 164 Or.App. 591, 993 P.2d 161, 171 (1999); *State v. Nunez–Martinez*, 90 Wash.App. 250, 951 P.2d 823, 825 (1998); *State v. Sartin*, 200 Wis.2d 47, 546 N.W.2d 449, 452 (1996).

We agree with the foregoing decisions. The purpose of the intent element in the definition of a possession offense is to separate innocent, accidental, or inadvertent conduct from criminal behavior. Requiring knowledge of the specific type of controlled substance would not further this policy, for an individual's mistake as to which controlled substance he possessed does not negate criminal intent. Ignorance of the particular variety of illegal substance is analogous to ignorance of the quantity of the substance possessed, which we have held is immaterial to a defendant's culpability for trafficking in a controlled substance. *State v. Barraza–Martinez*, 139 Idaho 624, 626–27, 84 P.3d 560, 562–63 (Ct.App.2003). Whether the defendant thinks he has a gram or a pound of the drug, whether he thinks those drugs are methamphetamine or cocaine or heroin, he knows that he is engaged in conduct prohibited by our laws. An individual ought not escape punishment for possessing an illegal substance merely because he mistakenly believed (or claims to have believed) that it was a different illegal substance.

■ We hold that in a prosecution for possession of a controlled substance, the State need only prove the defendant's knowledge that he had a controlled substance in his possession and need not prove that the defendant was aware of the precise type of controlled substance. Therefore, the instruction given to the jury in the present case describing the mental element of the offense was not erroneous.

## C. Sufficiency of the Evidence

■ Lastly, Stefani argues that the evidence in this case is insufficient to support a guilty verdict. Our review of the sufficiency of evidence is limited. We will not set aside a jury verdict if it is supported by substantial and competent evidence upon which a rational trier of fact could find all elements of the crime beyond a reasonable doubt. *State v. Thomas*, 133 Idaho 172, 174, 983 P.2d 245, 247 (Ct.App.1999); *State v. Haley*, 129 Idaho 333, 334, 924 P.2d 234, 235 (Ct.App.1996). Evidence that is entirely circumstantial may suffice to support a verdict, *State v. Stevens*, 93 Idaho 48, 50–51, 454 P.2d 945, 947–48 (1969), and substantial evidence does not mean that the evidence need be uncontradicted. As we have said:

> Evidence is sufficient to support a verdict where there is substantial, even if conflicting, evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.

*State v. Bronnenberg*, 124 Idaho 67, 70, 856 P.2d 104, 107 (Ct.App.1993). We may not substitute our opinion for that of the jury as to the credibility of witnesses or the weight to be given to their testimony. *State v. Gonzalez*, 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct.App.2000). The facts, and inferences to be drawn from those facts, are construed in favor of upholding the jury's verdict. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *State v. Peite*, 122 Idaho 809, 823, 839 P.2d 1223, 1237 (Ct.App.1992).

In the present case, the State's evidence, resting principally upon the testimony of a disinterested bystander, supports the guilty verdict. The bystander testified that Stefani appeared nervous in a situation where police were about to arrive on the scene of an automobile accident. He was not a driver, but a passenger, and thus presumably not at fault for the crash, so it may be inferred that his nervousness about the impending arrival of law enforcement officers had another source. While in this state, he reached deep into a garbage can, and soon thereafter a police officer found a methamphetamine pipe there. The jury could reasonably find that the methamphetamine pipe was placed in the garbage by Stefani.

### III.

### CONCLUSION

The prosecutor's closing argument, urging the jury to reject Stefani's defense as inconsistent with his pre-arrest silence, was a permissible use of impeachment evidence; and Stefani has shown no error in the jury instruction describing the mental element for possession of a controlled substance. We also conclude that the evidence was sufficient to support the jury's finding of guilt. Accordingly, the judgment of conviction is affirmed.

Chief Judge PERRY and Judge Pro Tem SCHWARTZMAN concur.