RENDERED: JUNE 25, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0511-DG

LESLEY RYAN CORNETT        APPELLANT

V.      ON REVIEW FROM COURT OF APPEALS
NO. 2023-CA-0680
PERRY CIRCUIT COURT NO. 22-CR-00205

COMMONWEALTH OF KENTUCKY        APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE LAMBERT**

**<u>AFFIRMING</u>**

Lesley Ryan Cornett was convicted of one count of first-degree possession of a controlled substance and was sentenced to one year of imprisonment. He appealed his conviction to the Court of Appeals as a matter of right and argued that, as he believed the controlled substance in his possession to be Suboxone, the Commonwealth failed to prove that he knowingly possessed lysergic acid diethylamide (LSD). The Court of Appeals affirmed, holding that, while the Commonwealth needed to prove that Cornett was knowingly and unlawfully in possession of a controlled substance, it did not need to prove that Cornett knew the identity of that controlled substance.

This Court thereafter granted Cornett's motion for discretionary review to address, as a matter of first impression, whether the statutes that criminalize the possession of a controlled substance require proof of a defendant's

knowledge of the identity of that substance. After review, we hold said statutes require proof beyond a reasonable doubt that a defendant knowingly and unlawfully possessed a controlled substance, but they do not require proof that a defendant knew the specific identity of that controlled substance. Accordingly, we affirm.

## I.    FACTS AND PROCEDURAL BACKGROUND

The material facts of this matter are not in dispute. Around 1:30 a.m. on February 21, 2021, Cornett was pulled over by two Hazard Police Department officers. It is unclear from the record what the reason for the initial stop was; at various points in the officers' respective testimonies, they claimed Cornett's vehicle had a headlight out, that his registration tags were expired, and that his license plate came back as being registered to a different vehicle. Soon after Cornett was pulled over, he was arrested for driving under the influence. At the time of the stop, Cornett had a passenger to whom he was providing a ride prior to returning to his residence in Bath County.

Following his arrest, the officers searched Cornett's vehicle incident to that arrest as well as with his consent. The officer who searched the vehicle found a cigarette packet containing a strip that the officer visually identified as Suboxone in the driver's side door. Between the front passenger side seat and the middle console, the officer found a glass pipe with residue. And, in the back floorboard behind the passenger seat, the officer found a tan bag containing what he visually identified as methamphetamine and a set of scales.

2

Subsequent forensic testing confirmed that the substance found in the tan bag in the rear floorboard was, in fact, methamphetamine. However, the testing further determined that the strip found in the cigarette packet in the driver's side door was not Suboxone but was instead LSD. This distinction was legally significant, as possession of Suboxone is a Class A misdemeanor,[1] while possession of LSD is a Class D felony. KRS 218A.1415(1)(d). Cornett was indicted on two counts of first-degree possession of a controlled substance: one count for possessing LSD and one count for possessing methamphetamine. He was not prosecuted for any other traffic or drug-related offenses, and his passenger was not arrested or charged with any offenses in relation to the incident.

During Cornett's trial, the analyst who conducted the forensic testing of the substances found in his vehicle testified that she knew immediately upon seeing the strip that it was not Suboxone. She explained that the strip was not "pharmacy grade" and, although it was similar in color to Suboxone, it was

---

[1] Suboxone is comprised of buprenorphine and naloxone. SUBOXONE, https://www.suboxone.com/ (last visited May 1, 2026). Naloxone is not a controlled substance, but buprenorphine is. In Kentucky, buprenorphine is a Schedule III controlled substance. Kentucky Revised Statutes (KRS) 218A.020(3)(a) directs that "[i]f any substance is designated . . . as a controlled substance under the federal Controlled Substances Act, the drug shall be considered to be controlled at the state level in the same numerical schedule corresponding to the federal schedule." *But see* KRS 218A.020(3)(b).

At the federal level, 21 C.F.R. § 1308.13(a) states: "Schedule III shall consist of the drugs and other substances . . . listed in this section." Subsection (e)(2)(i) of that statute then states: "Any material, compound, mixture, or preparation containing any of the following narcotic drugs or their salts, as set forth below . . . Buprenorphine[.]" Thus, possession of Buprenorphine constitutes second-degree possession of a controlled substance, a Class A misdemeanor. KRS 218A.1416.

3

shaped differently. Additionally, sublingual films like Suboxone are easy to tear, but the strip she tested was not. Cornett testified that the strip belonged to him, but he believed it to be Suboxone because the individual who gave it to him told him it was. He denied ownership of the methamphetamine. The jury ultimately found Cornett guilty of first-degree possession of a controlled substance in relation to the LSD but found him not guilty of first-degree possession of a controlled substance for the methamphetamine. The circuit court imposed the jury's recommended sentence of one year of imprisonment, and Cornett appealed his conviction and sentence to the Court of Appeals.

Before the Court of Appeals, Cornett argued that the circuit court erred by denying his motion for directed verdict for the charge of possessing LSD. *Cornett v. Commonwealth*, No. 2023-CA-0680-MR, 2024 WL 4469176 (Ky. App. Oct. 11, 2024). He asserted that the first-degree possession of a controlled substance statute, KRS 218A.1415, required the Commonwealth to demonstrate that he "knowingly and unlawfully" possessed LSD specifically, and that it could not satisfy that burden by merely proving that he knowingly and unlawfully possessed a controlled substance. *Id.* at *1.

The Court of Appeals rejected this argument and held that "[a]lthough the Commonwealth must still prove the defendant was in possession of a specific controlled substance, it is not required to prove the defendant had knowledge of the specific nature, character, or chemical makeup of that controlled substance." *Id.* at *4 (emphasis omitted). It consequently held that because Cornett admitted during his testimony that the strip was his and that

4

he believed it to be Suboxone, which is also a controlled substance, there was sufficient evidence to convict him of first-degree possession of a controlled substance, and the circuit court did not err by denying his motion for directed verdict. *Id.* at *2.

The Court of Appeals reached this conclusion by first looking to the language of the statutes that criminalize the possession of a controlled substance—KRS 218A.1415, KRS 218A.1416, and KRS 218A.1417—each of which require that a person "knowingly and unlawfully" possess a controlled substance. *Id.* "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." *Id.* (quoting KRS 501.020(2)). The Court of Appeals concluded that the circumstance described by the statute defining the offense was "possession of a controlled substance," and that the Commonwealth therefore only needed to present evidence sufficient to justify the inference that Cornett was aware that he was in possession of a controlled substance. *Id.* As Cornett acknowledged that he believed he was in possession of Suboxone, this element was satisfied. *Id.*

The court then discussed that the possession statute at issue is part of Kentucky's version of the Uniform Controlled Substances Act (UCSA), a model act that has been adopted in some form by nearly all fifty states and which mirrors the federal Controlled Substances Act: 21 U.S.C.[2] 801, *et seq. Id.* One

---

[2] United States Code.

of the goals of the UCSA is that it be "applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this [Act] among States enacting it." *Id.* (quoting UNIF. CONTROLLED SUBSTANCES ACT § 706 (1994)).

The Court of Appeals therefore considered, "for their persuasiveness only," case law from other jurisdictions that have adopted some version of the USCA and that have addressed this issue. *Id.* at \*2-\*4. It discussed cases from the Supreme Court of Wisconsin, a California Court of Appeals, and the Nebraska Court of Appeals, each of which held that the prosecution need only establish that a defendant knew he was in possession of a controlled substance and not that he knew the particular identity of that controlled substance. *Id.* at \*3-\*4 (quoting and discussing *State v. Sartin*, 546 N.W.2d 449, 455 (Wis. 1996); *People v. Guy*, 107 Cal. Rptr. 463, 467-68 (Cal. Ct. App. 1980); *State v. Lomack*, 545 N.W.2d 455, 468-69 (Neb. Ct. App. 1996)). It further noted a handful of other states and federal courts that have reached the same conclusion. *Id.* at \*4 (citing *United States v. Berick*, 710 F.2d 1035, 1040 (5th Cir. 1983); *United States v. Morales*, 577 F.2d 769, 776 (2d Cir. 1978); *Commonwealth v. Rodriguez*, 614 N.E.2d 649, 653 (Mass. 1993); *In re Ondrel M.*, 918 A.2d 543, 548 (Md. Ct. Spec. App. 2007); *Cooper v. State*, 728 S.E.2d 289, 291 (Ga. Ct. App. 2012)[3]).

---

[3] As we explain below, the Court of Appeals was incorrect in citing *Cooper*.

6

Judge Easton filed a separate concurring opinion in which he agreed that Cornett's motion for direct verdict was properly denied, but did so because the Commonwealth had produced more than a scintilla of evidence regarding Cornett's knowledge that he possessed LSD. *Id.* at *5. However, he disagreed with the "significant new rule" adopted by the lead opinion. *Id.* He suggested that, in cases such as this, one solution may be to instruct the jury on a lesser included offense, but he did not agree that the solution was to adopt a "wholesale rule that knowledge of possession of any controlled substance will sustain any level of controlled substance possession charge." *Id.* at *6.

This Court granted Cornett's subsequent motion for discretionary review of the Court of Appeals' ruling, and the matter is now before us for decision.

## II.    ANALYSIS

The sole issue[4] before us is whether the circuit court erred by denying Cornett's motion for directed verdict for the charge of first-degree possession of

---

[4] Cornett also alleges, for the first time here, that his testimony regarding his belief that he possessed Suboxone entitled him to a jury instruction on second-degree possession of a controlled substance. He further asserts his entitlement to an instruction regarding a mistake of fact pursuant to KRS 501.070. However, because he did not assert entitlement to either of those instructions before the circuit court, he cannot now raise these issues on appeal. Kentucky Rules of Criminal Procedure (RCr) 9.54(2) ("No party may assign as error . . . the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion[.]").

We decline Cornett's invitation to overrule *Martin v. Commonwealth,* which held that this kind of alleged error is not subject to review for palpable error. 409 S.W.3d 340, 346 (Ky. 2013) (holding "[A]ssignments of error in 'the giving or the failure to give' an instruction are subject to RCr 9.54(2)'s bar on appellate review[.]"). Moreover, we note that Cornett's tendered jury instructions on both counts of first-degree possession of a controlled substance were identical to the instructions the court ultimately submitted to the jury and that his tendered instructions did not include a

7

a controlled substance for his possession of LSD on the basis that the Commonwealth's proof failed to demonstrate that he knew the substance in his possession to be LSD.

At the close of the Commonwealth's evidence, Cornett moved for a directed verdict and argued that the Commonwealth failed to prove that he knowingly possessed LSD as required for the charge of first-degree possession of a controlled substance. He contended that both he and the officer who found the substance believed it to be Suboxone, and that that belief was not disproven until forensic testing was conducted upon it. He then renewed the motion on the same grounds at the close of all of the evidence. This issue was therefore properly preserved for our review. *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020). When ruling on a motion for directed verdict

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). When an appellate court reviews a trial court's ruling on a directed verdict motion, the test is whether "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt[.]" *Id.* Only then are we bound to rule that

---

proposed instruction on second-degree possession of a controlled substance or mistake of fact.

"the defendant is entitled to a directed verdict of acquittal." *Id.*

Notwithstanding, to the extent that we interpret the statutes at issue, we

conduct a *de novo* review and afford no deference to the lower courts. *See, e.g.,*

*Commonwealth v. Love,* 334 S.W.3d 92, 93 (Ky. 2011).

"All statutes of this state shall be liberally construed with a view to

promote their objects and carry out the intent of the legislature[.]" KRS

446.080(1). When interpreting a statute, "[w]e derive that intent from the

language the General Assembly chose, either as defined by the General

Assembly or as generally understood in the context of the matter under

consideration." *Century Aluminum of Ky., GP v. Dep't of Revenue,* 664 S.W.3d

546, 557–58 (Ky. 2022) (quoting *Commonwealth v. Wright,* 415 S.W.3d 606,

609 (Ky. 2013)). It is only when the plain language of a statute is ambiguous

or otherwise frustrates an interpretation utilizing its plain language that we

resort to external sources, such as the rules of construction. *Id.* at 558

(quoting *King Drugs v. Commonwealth,* 250 S.W.3d 643, 645 (Ky. 2008)).

Furthermore, and crucial to the matter now before us, a "statute must be

read as a whole and in context with other parts of the law[,]" and "[a]ll parts of

the statute must be given equal effect so that no part of the statute will become

meaningless or ineffectual." *Id.* (quoting *Lewis v. Jackson Energy Co-op. Corp.,*

189 S.W.3d 87, 92 (Ky. 2005)). And, "it is axiomatic that, when interpreting a

provision of a statute, a court should not, if possible, adopt a construction that

renders a provision meaningless or ineffectual or interpret a provision in a

manner that brings about an absurd or unreasonable result." *Schoenbachler v. Minyard*, 110 S.W.3d 776, 783 (Ky. 2003).

As previously mentioned, KRS 218A.1415, KRS 218A.1416, and KRS 218A.1417 are the statutes that criminalize the possession of a controlled substance in Kentucky. The first-degree possession statute, KRS 218A.1415 provides in relevant part:

> (1) A person is guilty of possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses:
>
> (a) A controlled substance that is classified in Schedules I or II and is a narcotic drug;
>
> (b) A controlled substance analogue;
>
> (c) Methamphetamine;
>
> (d) Lysergic acid diethylamide [(LSD)];
>
> (e) Phencyclidine [(PCP)];
>
> (f) Gamma hydroxybutyric acid (GHB), including its salts, isomers, salts of isomers, and analogues; or
>
> (g) Flunitrazepam [(Rohypnol)], including its salts, isomers, and salts of isomers.

KRS 218A.1416(1) establishes conduct that constitutes second-degree possession of a controlled substance and states:

> A person is guilty of possession of a controlled substance in the second degree when he or she knowingly and unlawfully possesses: a controlled substance classified in Schedules I or II which is not a narcotic drug; or specified in KRS 218A.1415; or a controlled substance classified in Schedule III; but not synthetic drugs, salvia, or marijuana.

10

Finally, KRS 218A.1417(1) directs that "A person is guilty of possession of a controlled substance in the third degree when he or she knowingly and unlawfully possesses a controlled substance classified in Schedules IV or V." The statutory scheme defines a "controlled substance" as "methamphetamine, or a drug, substance, or immediate precursor in Schedules I through V [including] a controlled substance analogue[.]" KRS 218A.010(8).

"Knowingly", as it is used in each of the foregoing statutes, is defined as follows: "A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." KRS 501.020(2).[5] This Court has previously interpreted KRS 501.020(2) to mean that "nothing short of actual knowledge will suffice to sustain a conviction." *Cisco v. Commonwealth*, 730 S.W.3d 800, 810 (Ky. 2025) (quoting *Love v. Commonwealth*, 55 S.W.3d 816, 825 (Ky. 2001)). However, "proof of actual knowledge can be by circumstantial evidence." *Id.*

With regard to KRS 218A.1415, KRS 218A.1416, and KRS 218A.1417, we conclude that the conduct described by the statutes at issue is the knowing *possession* of a controlled substance, and that the knowledge requirement does not apply to the *identity* of that controlled substance. While the Commonwealth must prove that a given defendant knew he was in possession

---

[5] KRS 218A.015 of the UCSA directs that "[w]hen used in this chapter the [term] . . . "knowingly," . . . shall have the same definition and the same principles shall apply to their use as those terms are defined and used in KRS Chapter 501."

of a controlled substance, it need not prove that he knew its exact identity. The knowledge requirement is meant to shield an individual who is truly unaware that a controlled substance is in his possession. For example, a law-abiding parent whose recalcitrant minor or adult child places an unlawfully obtained controlled substance in the parent's home or vehicle without the parent's knowledge, or a postal worker who possesses a package for delivery without knowledge that it contains a controlled substance. It is not meant to serve as a defense to defendants who are in knowing possession of a controlled substance, but are ignorant, mistaken, or willing to perjure themselves regarding its precise identity.

It is true that, when read in a vacuum as Cornett proposes, KRS 218A.1415(1)(d) reads: "A person is guilty of possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses . . . Lysergic acid diethylamide[.]" But statutes must be read as a whole and in a manner that does not lead to an absurd result. When doing that with KRS 218A.1415 through KRS 218A.1417, it becomes clear that adopting Cornett's interpretation is untenable.

LSD is one of only five controlled substances that are identified by name in KRS 218A.1415, KRS 218A.1416, or KRS 218A.1417; the others being methamphetamine, PCP, GHB, and Rohypnol. KRS 218A.1415(1)(c)-(g). Otherwise, those statutes contain more general language forbidding the knowing and unlawful possession of:

- "*A controlled substance* that is classified in Schedules I or II and is a narcotic[,]" or "[a] controlled substance analogue[.]" KRS 218A.1415(1)(a)-(b) (defining first-degree possession) (emphasis added).

- "*[A] controlled substance* classified in Schedules I or II which is not a narcotic" or otherwise listed in KRS 218A.1415, or "*a controlled substance* classified in Schedule III" that is not a synthetic drug, salvia, or marijuana. KRS 218A.1416(1) (defining second-degree possession) (emphasis added); and

- "*[A] controlled substance* classified in Schedules IV or V." KRS 218A.1417(1) (defining third-degree possession) (emphasis added).

The likely reason that KRS 218A.1415(1)(c)-(g) identifies those five substances by name is that the catchall provision in KRS 218A.1415(1)(a) requires the knowing and unlawful possession of "[a] controlled substance that is classified in Schedules I or II *and is a narcotic drug.*" (Emphasis added). But the substances listed by name in KRS 218A.1415(1)(c) – (g)—are not "narcotic drugs." *See* KRS 218A.010(33) (defining "narcotic drug"). Yet the General Assembly nevertheless made a policy decision that possession of those substances should not be penalized as second-degree possession of a controlled substance, which prohibits the knowing and unlawful possession of "a controlled substance classified in Schedules I or II which *is not a narcotic drug*[.]" KRS 218A.1416(1) (emphasis added).

Regardless of the legislative reason for KRS 218A.1415's unique wording, Cornett's interpretation is only arguably supportable in relation to the

13

possession of methamphetamine, LSD, PCP, GHB, and Rohypnol, specifically. Otherwise, KRS 218A.1415, KRS 218A.1416, and KRS 218A.1416 only forbid the knowing and unlawful possession of "a controlled substance" under a particular schedule or "a controlled substance analogue." Stated differently, Cornett believes that because KRS 218A.1415(d) forbids the knowing and unlawful possession of LSD specifically, the Commonwealth had to prove beyond a reasonable doubt that he knew the substance he possessed was in fact LSD. But that interpretation would be unsupportable under other factual circumstances.

For example, suppose Cornett had believed he possessed Valium, a Schedule IV, but he actually possessed OxyContin, a Schedule II narcotic. This would be a similar alleged mistake of fact to that which is at issue in this case, but there would be no corresponding statutory support for his contention that the Commonwealth needed to prove that he knew the substance he possessed was OxyContin, as there is no prohibition on the knowing and unlawful possession of OxyContin specifically. Rather, he would have been prosecuted under KRS 218A.1415(1)(a), which forbids the knowing and unlawful possession of "[a] controlled substance that is classified in Schedules I or II and is a narcotic drug." Thus, the only time any textual support for Cornett's interpretation would exist would be in cases wherein a defendant is charged with possession of methamphetamine, LSD, PCP, GHB, or Rohypnol, specifically. But it would be an absurd interpretation to hold that the Commonwealth must prove a defendant's knowledge of those five substances

14

specifically, while it would not for every other controlled substance whose possession is criminalized under KRS 218A.1415 through KRS 218A.1417.

Consequently, when we consider this statutory scheme as a whole, as we must, Cornett's suggested interpretation cannot carry the day. We instead hold that the Commonwealth need only prove beyond a reasonable doubt that a defendant knowingly and unlawfully possessed a controlled substance. It does not bear the burden of proving that a defendant knew the specific identity of the controlled substance for which he is charged. Accordingly, the circuit court in this case did not abuse its discretion by denying Cornett's motion for a directed verdict, as the Commonwealth was not required to present proof that Cornett knew he possessed LSD specifically. Moreover, it would not have been clearly unreasonable for the jury to find guilt: Cornett himself testified that the strip found in the driver's side door belonged to him, that he obtained it unlawfully, and that he believed it to be Suboxone, a controlled substance. Therefore, we affirm.

We further note, while not dispositive, that there is ample support for the foregoing interpretation from numerous jurisdictions, including the United States Supreme Court. Federally, 21 U.S.C. § 841(a)(1) of the Controlled Substances Act criminalizes the possession of a controlled substance with the intent to distribute that substance; it reads in pertinent part: "[I]t shall be unlawful for any person knowingly or intentionally. . . [to] possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" Simple possession of a controlled substance is a lesser included offense to possession

15

with intent to distribute, and it is codified at 21 U.S.C. § 844(a) which reads, similar to our statutes: "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance[.]" The federal courts uniformly interpret 21 U.S.C. § 841(a) to require proof that a defendant knew he was in possession of a controlled substance, but not to require proof that a defendant knew the particular identity of that substance.

In *McFadden v. United States*, the United States Supreme Court held that "[t]he ordinary meaning of § 841(a)(1) . . . requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules . . . even if he [does] not know which substance it was." 576 U.S. 186, 192 (2015). The Court reasoned that

> The [Controlled Substances Act] makes it "unlawful for any person knowingly or intentionally. . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." [21 U.S.C. § 841(a)(1)]. Under the most natural reading of this provision, the word "knowingly" applies not just to the statute's verbs but also to the object of those verbs—"*a* controlled substance." . . . And the CSA defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V." The ordinary meaning of § 841(a)(1) thus requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules.

*Id.* at 191-92 (internal citations omitted).

Unsurprisingly, several of the United States Courts of Appeals have reached the same conclusion. *See, e.g.*, *United States v. Achey*, 943 F.3d 909, 913–14 (11th Cir. 2019) ("Both §§ 841(a)(1) and 846—the statutes defining the elements of the crime of conspiracy to distribute a controlled substance—only require the government to prove that the defendant conspired to distribute

16

what he knew was a controlled substance.  The specific type of drug involved is not an element of § 841(a) but is instead 'relevant only for sentencing purposes.'"); *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) ("[A] defendant may be convicted under § 841(a)(1) even if he does not know the type or quantity of the controlled substance."); *United States v. Sheppard*, 219 F.3d 766, 769 (8th Cir. 2000) ("To convict a defendant of violating 21 U.S.C. § 841(a) . . . "[t]he government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing."); *United States v. Cheung*, 836 F.2d 729, 731 (1st Cir. 1988) ("[T]he law is settled that a defendant need not know the exact nature of a drug in his possession to violate Section 841(a)(1)."); *United States v. Berick*, 710 F.2d 1035, 1040 (5th Cir. 1983) ("A defendant need not know the exact nature of the substance in his custody in order to be convicted of possession of a controlled substance."); *United States v. Morales*, 577 F.2d 769, 776 (2d Cir. 1978) ("[T]he law is settled that a defendant need not know the exact nature of a drug in his possession to violate § 841(a)(1); it is sufficient that he be aware that he possesses some controlled substance."); *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir. 1976) ("The government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing. . . [A] defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses.").

17

Several state courts have likewise concluded that the prosecution need only prove that a defendant knew the substance in his possession to be a controlled substance, and that it is not required to prove that the defendant knew the particular identity of that substance. The appellate courts of our sister states have reached this conclusion based on their own versions of the Uniform Controlled Substances Act.

*See, e.g., Sartin*, 546 N.W.2d at 450 (interpreting Wis. Stat. Ann. § 961.41: "Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture or deliver, a controlled substance . . ."); *Rodriguez*, 614 N.E.2d at 653 (interpreting Mass. Gen. Laws Ch. 94c, § 32E (1990 ed.): "Any person who traffics in a controlled substance . . . by knowingly or intentionally manufacturing, distributing or dispensing or possessing with intent to manufacture, distribute or dispense by bringing into the commonwealth a net weight of fourteen grams or more of a controlled substance as so defined. . ."); *State v. Neujahr*, 540 N.W.2d 566, 572 (Neb. 1995) (interpreting Neb. Rev. Stat. Ann. § 28-416(3): "[A] person knowingly or intentionally possessing a controlled substance. . . shall be guilty of a Class IV felony."); *Manuel v. State*, 258 A.3d 987, 995 (Md. Ct. Spec. App. 2021) (interpreting Md. Code Ann., Crim. Law § 5-602: "[A] person may not: (1) distribute or dispense a controlled dangerous substance; or (2) possess a controlled dangerous substance . . ."); *State v. Miles*, 805 S.E.2d 204, 207-08 (S.C. Ct. App. 2017) (interpreting S.C. Code Ann. § 44-53-370(e)(3): "Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or

18

brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of: . . . four grams or more of any morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin . . . or four grams or more of any mixture containing any of these substances, is guilty of a felony which is known as 'trafficking in illegal drugs'. . ."); *Sierra v. Commonwealth*, 722 S.E.2d 656, 662 (Va. App. 2012) (interpreting Va. Ct. Code Ann. § 18.2-250: "It is unlawful for any person knowingly or intentionally to possess a controlled substance . . ."); *State v. Ali*, 775 N.W.2d 914, 918-19 (Minn. Ct. App. 2009) (interpreting Minn. Stat. § 152.025, subd. 2 (2006): "[A] person is guilty of controlled substance crime in the fifth degree if . . . the person unlawfully possesses one or more mixtures containing a controlled substance classified in schedule I, II, III, or IV."); *State v. Stefani*, 132 P.3d 455, 461 (Idaho Ct. App. 2005) (interpreting Idaho Code § 37-2732: "It is unlawful for any person to possess a controlled substance unless . . ."); *People v. Perea*, 126 P.3d 241, 244-45 (Colo. Ct. App. 2005) (interpreting Colo. Rev. Stat. § 18–18–405(1)(a), 2004: "[I]t is unlawful for any person knowingly to . . . possess . . . a controlled substance."); *State v. Edwards*, 607 A.2d 1312, 1313 (N.J. Super. Ct. App. Div. 1992) (interpreting N.J. Stat. Ann. § 2C:35-10: "It is unlawful for any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a controlled dangerous substance or controlled substance analog . . . "); *People v.*

19

*James*, 348 N.E.2d 295, 296–98 (Ill. Ct. App. 1976) (interpreting Ill. Rev. Stat.1973, ch. 56 1/2, par. 1401(a)(8): "[I]t is unlawful for any person knowingly to . . . deliver . . . a controlled substance . . .'); *People v. Garringer*, 121 Cal. Rptr. 922, 927 (Cal. Ct. App. 1975) (interpreting Cal. Health & Safety Code § 11377: "[E]very person who possesses any controlled substance. . .").

Cornett responds to this plethora of case law by citing to jurisprudence from other states that he contends require the prosecution to prove that a defendant knew the specific identity of the controlled substance for which he is charged. In particular, he cites to *State v. Keel*, 357 P.3d 251 (Kan. 2015); *Duvall v. State*, 712 S.E.2d 850 (Ga. 2011); *State v. Blake*, 985 P.2d 117 (Idaho 1999); *Camann v. Commonwealth*, 896 S.E.2d 370 (Va. Ct. App. 2024); *State v. Coleman*, 742 S.E.2d 346 (N.C. Ct. App. 2013); and *State v. Wallway*, 865 P.2d 531 (Wash. App. 1994).

Preliminarily, we must clarify that by citing *Keel*, *Blake*, *Camann*, and *Wallway* in support of his argument, Cornett has misconstrued the respective laws of Kansas, Idaho, Virginia, and Washington. We will address each in turn.

First, Cornett is correct that *Keel* discusses that the Kansas Supreme Court "has held that possession of a controlled substance requires specific intent to exercise control over the substance, with knowledge of the *nature* of the substance." 357 P.3d at 257 (internal quotation mark omitted) (emphasis added) (quoting *State v. Washington*, 772 P.2d 768 (1989)). But *Keel* does not address whether knowledge of the "nature of the substance" means knowledge

20

of the substance's status as controlled or knowledge of its identity. That question was answered by that Court four years later in *State v. Rizal*, 445 P.3d 734 (Kan. 2019). The *Rizal* holding split the proverbial baby by ruling

> that to convict a defendant of possession with intent to distribute a controlled substance under K.S.A. 2011 Supp. 21-5705(a), the State must prove that the defendant had knowledge of the nature of the controlled substance—meaning, that the defendant *either* knew the identity of the substance *or* knew that the substance was controlled.

*Id.* at 741 (emphasis added). Accordingly, Kansas does not categorically require proof of a defendant's knowledge of the identity of a controlled substance.

Next, Cornett cites *Blake* to argue that a "defendant's ignorance or mistake of fact, if believed by the jury, disproves criminal intent, requiring acquittal." But the entirety of the quote to which he refers states:

> In the present case, the instructions would allow the jury to convict Blake if he knew there was some substance under his seat and something in the wallet but truly, although negligently, believed those substances to be harmless items such as sugar. In such a case, Blake's ignorance or mistake of fact, if believed by the jury, should disprove any criminal intent, requiring an acquittal.

985 P.2d at 122. In the case before us, Cornett did not claim that he believed the strip he possessed to be a legal item. Rather, his defense was that he believed he possessed a different illegal substance than that for which he was charged. *Blake*'s holding simply does not apply.

Moreover, six years after *Blake*, in *Stefani*, the Idaho Court of Appeals addressed the factual circumstance at issue in Cornett's case, i.e., "when a person possesses a particular controlled substance while believing it to be a

21

different controlled substance, as in possessing cocaine under the mistaken belief that it is methamphetamine." *Stefani*, 132 P.3d at 460. When confronted with those circumstances, the court held "that in a prosecution for possession of a controlled substance, the State need only prove the defendant's knowledge that he had a controlled substance in his possession and need not prove that the defendant was aware of the precise type of controlled substance." *Id.* at 461. Accordingly, Idaho does not require proof of a defendant's knowledge of the identity of a particular controlled substance.

*Camann* likewise lends no support to Cornett. Camann was convicted of two felonies under Va. Code Ann. § 18.2-250 for possessing a single white powder that was a mixture of two controlled substances: fentanyl and etizolam. 896 S.E.2d at 372. He acknowledged that he knew the powder was in his possession, but claimed he believed it to be comprised solely of fentanyl. *Id.* On appeal, he argued the prosecution had to prove that he knew the mixture was comprised of two different controlled substances in order to convict him on both counts. The Virginia Court of Appeals agreed, but it did not do so on the basis that the prosecution had to prove he knew the *identity* of both controlled substances in the mixture. *Id.* at 375-77. Rather, the court held that the proof had to demonstrate that he knew two different controlled substances were *present* in the mixture. *Id.* It expounded:

> In 2012, we held in *Sierra* [v. *Commonwealth*, 722 S.E.2d 656 (Va. App. 2012)] "that the plain language of Code § 18.2-250 requires a defendant to know that the substance he possesses is in fact a controlled substance, but . . . not . . . precisely what controlled substance it is." . . .

22

Thus, if a person thinks he has heroin, but it turns out to be fentanyl, that person has still "knowingly or intentionally . . . possess[ed] a controlled substance." Code § 18.2-250 . . . In other words, "[a] claim by a defendant that he knew he was possessing a controlled substance, but was unaware or mistaken as to the precise identity of that substance, is not a defense under Code § 18.2-250." . . .

Applying those principles here makes clear that each conviction for drug possession under Code § 18.2-250 requires the Commonwealth to prove that the defendant possessed the substance with knowledge of its nature and character as a controlled substance. . .

Our holding here that every conviction under Code § 18.2-250 requires knowing possession is in perfect harmony with *Sierra*. A person who knows that the pill or powder he possesses contains *a* controlled substance is criminally liable for possession under *Sierra*, even if he thinks he possesses a particular controlled substance that turns out to be different. Likewise, when the Commonwealth seeks two convictions for possessing a mixture containing more than one controlled substance, the Commonwealth must prove that the defendant knew there were at least two controlled substances in the mixture.

*Id.* Thus, Virginia also counts itself among the states that only require proof that a defendant knows the substance he possesses is a controlled substance and does not require proof of a defendant's knowledge of the substance's particular identity.

Last, in *Wallway*, Wallway was convicted of the unlawful *manufacture* of a controlled substance. 865 P.2d at 532. Washington is a bit of an odd duck, as it treats punishable conduct in relation to controlled substances differently regarding the proof of mens rea required. For example, *State v. Boyer*, 588 P.2d 1151 (Wash. 1979), "held that guilty knowledge (i.e., an understanding of the identity of the product being delivered), is an element of the charge of

23

*unlawful delivery* of a controlled substance[,]" while *State v. Sims*, 829 P.2d 1075 (Wash. 1992) "held it is not necessary to allege that a person acted with guilty knowledge when that person is charged with. . . possession of a controlled substance *with intent to manufacture or deliver*." *Wallway*, 865 P.2d at 534 (emphasis added).

As for simple possession, for many years, Washington treated it as a strict liability offense pursuant to the interpretation of the statute announced in *State v. Cleppe*, 635 P.2d 435 (Wash. 1981), *overruled by State v. Blake*, 481 P.3d 521 (Wash. 2021). In other words, the prosecution did not have to prove a defendant was even aware a controlled substance was in his possession, let alone its particular identity, in order to secure a conviction for possession of a controlled substance.

In *Blake*, the Washington Supreme Court held that the version of the simple possession statute, Wash. Rev. Code Ann. § 69.50.4013(1), that existed at that time was unconstitutional. The statute formerly read: "It is unlawful for any person to possess a controlled substance . . . " *Blake*, 481 P.3d at 525. The *Blake* Court held that the statute, and the Court's interpretation of it via *Cleppe*,

> [criminalizes] innocent and passive possession, even by a defendant who does not know, and has no reason to know, that drugs lay hidden within something that they possess. The legislature's police power goes far, but not that far. Accordingly, [§] 69.50.4013(1)—the portion of the simple drug possession statute creating this crime—violates the due process clauses of the state and federal constitutions and is void.

*Id*. at 534.

24

*Blake* was rendered just five years ago in 2021. In the interim, the Washington State Legislature amended § 69.50.4013(1). The statute now reads: "[I]t is unlawful for any person to: Knowingly possess a controlled substance. . ." However, it does not appear that, in Washington's post-*Blake* landscape, an appellate court has addressed whether a defendant must know the specific identity of the substance he possessed in order to be convicted of possession of a controlled substance.

That leaves *Coleman* and *Duvall*, the precedents cited by Cornett from North Carolina and Georgia, respectively. In North Carolina, while not mandatory, "the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions [(N.C.P.I.)]" *State v. Sexton*, 647, 571 S.E.2d 41, 45 (N.C. Ct. App. 2002) (quoting *Caudill v. Smith*, 450 S.E.2d 8, 13 (N.C. Ct. App. 1994)). And the outcome in *Coleman* was solely dependent upon the guidance provided by N.C.P.I. and not the court's interpretation of a statute.

Coleman was pulled over for a traffic violation, and officers found marijuana and heroin in his vehicle. 742 S.E.2d at 347. Coleman contended that he believed the packages he was transporting contained marijuana and cocaine rather than marijuana and heroin. *Id.* at 349. Thus, his sole defense to the "charges of trafficking in heroin by possession and by transportation was that he did not know the box in his possession contained heroin." *Id.* at 350.

In North Carolina, "[k]nowledge that one possesses contraband is presumed by the act of possession *unless* the defendant denies knowledge of

25

possession and contests knowledge as a disputed fact." *Id.* at 349 (emphasis added). Thus, if a defendant does not contest that fact, N.C.P.I, Criminal 260.17, instructs the trial court to provide the following instruction: "that the defendant knowingly possessed [heroin]. A person possesses [heroin] if he is aware of its presence and has . . . both the power and intent to control the disposition or use of that substance." *Id.* In the event that the defendant raises that issue, footnote 4 to that pattern instruction directs:

> If the defendant *contends* that he did not know the true identity of what he possessed, add this language to the first sentence: "and the defendant knew that what he possessed was [heroin,]" such that the instruction would read: "that defendant knowingly possessed heroin and defendant knew that what he possessed was heroin."

*Id.* Upon review of the record, the *Coleman* Court determined that the trial court reversibly erred by "[failing] to instruct the jury that in order to find defendant guilty it must find that he knew what he possessed was heroin," and ordered a new trial. *Id.* at 352. As the basis for the ruling in *Coleman* was the trial court's failure to follow the directions provided by the N.C.P.I., which is unique to North Carolina, we do not consider the opinion to be persuasive.

Finally, in *Duvall,* Duvall was convicted of felony possession of a controlled substance for possessing Ambien without a prescription in violation of Ga. Code Ann. § 16-13-30(a). 712 S.E.2d at 851. That statute directs: "Except as authorized by this article, it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance." Duvall acknowledged that he knew he possessed a sleeping aid, but his sole defense

26

was that he believed the tablets to be over the counter. *Id.* The Georgia Court of Appeals had construed § 16-13-30(a) "not to require the defendant to know that the pills he possessed were a controlled substance[,]" and that the statute only required "knowledge that one possessed *some* drug. . . and that a defendant's ignorance as to whether a particular drugs he possesses is categorized as a controlled substance is not a defense[.]" *Id.* at 850-51.

The Georgia Supreme Court reversed the Court of Appeals, holding that the Court of Appeals had misconstrued Duvall's defense. *Id.* at 851. While Duvall's defense was that he believed the pills in his possession to be a non-controlled substance, the Court of Appeals' approach suggested that Duvall knew he possessed Ambien, but did not know that Ambien was a controlled substance. *Id.* The Supreme Court acknowledged that "[w]ere that the case, the Court of Appeals' analysis of the matter would have been correct." *Id.* It then went on to hold that

> [p]ossession of a controlled substance is not a strict liability offense. Here, the criminal intent required by OCGA §§ 16–13–30(a) and 16–13–75 is intent to possess a drug with knowledge of the chemical identity of that drug. The actus reus in these statutes is possession of the drug, which one knows oneself to possess, when that drug is a controlled substance . . . Therefore, possessing [Ambien], which one knows or understands to be [Ambien], is a violation of OCGA § 16–13–30(a) because [Ambien] is a controlled substance. On the other hand, possessing [Ambien], which one believes or understands to be an over-the-counter medication . . . is not a crime because the requisite mens rea is not present. It is this latter scenario which appellant asserts to be the case. . . . Appellant's knowledge of the chemical identity of the substance in his possession is purely a question of fact. As such, it should have been a question for the jury, and the jury should have been instructed to consider the defense of mistake of fact. Because appellant's request for such an instruction was

27

> erroneously denied by the trial court, appellant is entitled to a new trial.

*Id.* Thus, as with *Blake,* the facts of *Duvall* are not on point with the case before us. Duvall's defense was that he believed himself to be in possession of a non-controlled, over-the-counter sleep aid, while Cornett believed himself to be in possession of a different controlled substance than that with which he was charged.

Nevertheless, Cornett is correct that Georgia law does require proof that a defendant knew the specific identity of a controlled substance in order to be convicted. In *Cooper v. State,* Cooper was convicted of possession of N-Benzylpiperazine (BZP), a "euphoric stimulant" that has psychoactive effects similar to methamphetamine and ecstasy and is a Schedule I controlled substance. 728 S.E.2d at 290. He testified in his defense that he believed the substance to be ecstasy instead of BZP. *Id.* Citing *Duvall,* the Court of Appeals agreed with Cooper "that the State must prove that he knowingly possessed the chemical N-Benzylpiperazine." *Id.* at 291. However, as it further concluded that "[t]he jury was not required to accept as true Cooper's assertion that he believed the pills were a different Schedule I controlled substance[,]" it declined to reverse his conviction. *Id.*

Cornett appears to cite *Duvall* to support his argument that his jury should have been instructed on mistake of fact. But, as we have already addressed *supra,* he did not request a mistake of fact instruction before the circuit court and accordingly is prohibited from raising that issue herein. At

28

any rate, he would not have been entitled to a mistake of fact instruction because the Commonwealth only needed to prove that he knew he possessed a controlled substance, a fact which he himself admitted. And while we respect the limited number of our sister jurisdictions that have reached a different outcome on this issue, we stand by our interpretation of our own adopted version of the USCA and conclude that it does not require proof that a defendant knew the particular identity of the controlled substance for which he is convicted, so long as he knew the substance to be controlled.

## III. CONCLUSION

Based on the foregoing, we affirm.

Lambert, C.J.; Bisig, Conley, Keller, Nickell, and Thompson, JJ., sitting. Bisig, Conley, Keller, and Nickell, JJ., concur. Thompson, J., concurs in result only. Goodwine, J., not sitting.


COUNSEL FOR APPELLANT:

Jared Travis Bewley
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Stephanie Lynne McKeehan
Assistant Attorney General

29